# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

---------------------------------------------------------------- x

**BIG BIRDS, LLC**
40 New Plant Court
Owings Mills, Maryland 21117

                    Plaintiff,

     v.

**CC BEAUTY COLLECTION INC.**
905 Shotgun Road
Sunrise, Florida 33326;

**Civil Action No. 19-CV-3594**

**PERFORMANCE BRANDS, INC.**
905 Shotgun Road
Sunrise, Florida 33326;

**COMPLAINT AND JURY TRIAL
DEMAND**

**CHRISTINE MEDRICK**
905 Shotgun Road
Sunrise, Florida 33326;

**STACY KAUFMAN;**
905 Shotgun Road
Sunrise, Florida 33326;

**JOHN DOES 1-10,**

                  Defendants.

---------------------------------------------------------------- x

       Plaintiff Big Birds, LLC ("Plaintiff"), by and through its counsel, for its Complaint against

CC Beauty Collection Inc. ("CC Beauty"), Performance Brands, Inc. ("Performance"); Christine

Medrick ("Medrick"); Stacy Kaufman ("Kaufman"), and John Does 1-10 ("Doe Defendants")

(collectively, "Defendants"), alleges as follows:

## PARTIES

1.      Plaintiff is a limited liability company organized and existing under the laws of the State of Maryland, with a place of business at 40 New Plant Court, Owings Mills, Maryland 21117.

2.      On information and belief, CC Beauty is a corporation organized and existing under the laws of the State of Florida, with a principal place of business at 905 Shotgun Road, Sunrise, Florida 33326.

3.      On information and belief, Performance is a corporation organized and existing under the laws of the State of Florida, with a principal place of business at 905 Shotgun Road, Sunrise, Florida 33326.

4.      On information and belief, Defendant Medrick, an individual, is the President and owner of CC Beauty.

5.      On information and belief, Defendant Kaufman, an individual, is the President an owner of Performance.

6.      The true names, involvement and capacities, whether individual, corporate, associated or otherwise, of the Doe Defendants are unknown to Plaintiff.  Therefore, Plaintiff sues the Doe Defendants by a fictitious name. Plaintiff is informed and believes, and on that basis alleges, that each of the Doe Defendants sued herein is responsible in some manner for the events and occurrences referred to herein. When the true names, involvement and capacities of these parties are ascertained, Plaintiff will seek leave to amend this Complaint accordingly.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over this action pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; the Trademark Act of 1946, as

amended, 15 U.S.C. § 1051 *et seq.*, including 15 U.S.C. § 1121; and 28 U.S.C. §§ 1331, 1338, and 1367.

8.      Defendants are subject to general and specific jurisdiction in this Court, *inter alia*, because they conduct business in the District and have committed at least some of the acts complained of herein, including tortious interference, within this District.

9.      On information and belief, Defendants sell large quantities of various products, including beauty and haircare products, to customers in Maryland, engage distributors based in Maryland, maintain an interactive website accessed by residents of Maryland, and otherwise avail themselves of the privilege of doing business in the State of Maryland.

10.     Each of the Defendants have purposely directed their activities, including the illegal acts against Plaintiff described below, toward this District and this action arises from those activities.

11.     Venue in this District is proper under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims occurred, and are continuing to occur, in this District.

## BACKGROUND FACTS

12.     Defendants are in the business of manufacturing and distributing beauty products, including products sold under the PURE BRAZILIAN mark ("Pure Brazilian Products").

13.     Defendant CC Beauty is the registrant of U.S. Trademark Serial Nos. 87727136 and 85325715 for PURE BRAZILIAN in stylized form ("the PURE BRAZILIAN Registrations").

14.     Plaintiff is in the business of lawfully acquiring and re-selling various consumer products for a profit.

15.     Plaintiff resells products through various channels, including through an Amazon storefront.

16.     Since its formation, Plaintiff has served tens of thousands of customers through its Amazon storefront.

17.     Defendants' illegal actions have irreparably damaged, and threaten to destroy, Plaintiff's successful business.

## ONLINE MARKETPLACES

18.     Upon information and belief, Amazon is the world's largest online retailer.

19.     According to published reports, Amazon is worth more than the next eight largest retailers located in the United States combined. *See* JP Mangalindan, *Amazon is now worth more than America's 8 largest retailers combined*, Yahoo Finance (Jan. 25, 2017), https://finance.yahoo.com/news/amazon-is-now-worth-more-than-americas-8-largest-retailers-combined-124101625.html.

20.     Amazon's online e-commerce platform allows for third-parties, like Plaintiff, to sell products on its e-commerce platform.

21.     The privilege of selling on Amazon is highly advantageous, as Amazon provides third-parties with exposure to the world marketplace on a scale that no other online retailer can currently provide.

22.     Since approximately 2016, Plaintiff has had a contractual and business relationship with Amazon, such that Plaintiff was and is permitted to sell products on Amazon's e-commerce platform.

23.     Third-party sellers, like Plaintiff, create an online storefront on Amazon. When a customer buys a product on Amazon, the customer can see the online store from which the customer is purchasing a product. Thus, Plaintiff has the online equivalent of a brick-and-mortar store.

24.     A significant portion of Plaintiff's business is derived from the sale of products on Amazon and, in particular, through its Amazon storefront.

25.     Once Plaintiff acquires products from reputable sources, Plaintiff resells the same products on Amazon at a profit.

26.     In general, transactions on Plaintiff's Amazon storefront are completed by Amazon, whereby Amazon ships Plaintiff's products from an Amazon warehouse (known as "Fulfilment by Amazon" or "FBA").

27.     Plaintiff has invested significant efforts into building a successful and reputable Amazon storefront.

28.     Plaintiff's Amazon storefront has amassed over fifteen-thousand reviews and a holds a near perfect customer rating.

29.     A small sample of Plaintiff's recent reviews are shown below:



30.     Any harm that comes to the relationship between Plaintiff and Amazon creates a potential for serious and irreparable injury to Plaintiff.

## DEFENDANTS ATTEMPT TO STIFLE COMPETITION BY FILING FALSE INTELLECTUAL PROPERTY COMPLAINTS

31.     On information and belief, Defendants seek to increase their profits by controlling the distribution and pricing of their products, including the Pure Brazilian Products, through unlawful means.

32.     As demonstrated below, Defendants have engaged in a coordinated effort to preclude select third-parties from reselling genuine Pure Brazilian Products on online marketplaces by false allegations of intellectual property infringement and defamation.

33.     On information and belief, the purpose of these false complaints and defamatory statements was to prevent Plaintiff from selling genuine Pure Brazilian Products on Amazon.

34.     On information and belief, the purpose of these false complaints was to damage Plaintiff's reputation and goodwill, such that Amazon would suspend or terminate its relationship with Plaintiff.

35.     Because Plaintiff sells only genuine products through its Amazon storefront, Defendants have no legitimate intellectual property claim(s) against Plaintiff.

36.     Under the first sale doctrine, Plaintiff is lawfully permitted to re-sell Pure Brazilian Products without violating the intellectual property rights or other legal rights of Defendants.

37.     The first sale doctrine provides that, once a manufacturer places a product in the stream of commerce through its first sale, it can no longer enforce its intellectual property rights with regard to re-sellers, so long as the re-sellers are selling authentic, unaltered products.

38.     It is well-known among brand owners that Amazon has a policy of acting on virtually any notice of intellectual property infringement, whether legitimate or not.

39.     As one Amazon expert explained:

In order to meet a minimum liability standard, Amazon will act upon properly submitted and completed notice claims of infringement. They will notify specified marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. The rest though, is up to you. And, unless you (and possibly your legal team) can prove that the Notice claim is false, Amazon considers it valid and actionable.

***Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.*** Amazon [is] not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications.

They don't independently verify that any of the information is actually correct, or valid. The rights owner makes a legally-binding declaration in the form, and signs it.

*See* Chris McCabe, *False Infringement Claims are Rife on Amazon*, WebRetailer (Apr. 11, 2018), https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/ (emphasis added).

40.     On information and belief, Defendants were, at all relevant times, aware of the foregoing Amazon policy with respect to reports of intellectual property infringement.

41.     On information and belief, Defendants were, at all relevant times, aware that Amazon will act on reports that a product is "counterfeit," regardless of the truth of the report.

42.     The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

43.     Defendants filed, or direct their agents to file, complaints with Amazon that alleged that Plaintiff was selling "counterfeit" Pure Brazilian Products.

44.     Defendants knew that such allegations were false.

45.     Each complaint submitted to Amazon was signed under penalty of perjury by an employee or agent of Defendants.

46.     For example, when submitting an infringement report to Amazon, an intellectual property rights owner must read and accept the following statements:

> "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

> "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

Report Infringement, https://www.amazon.com/report/infringement (last visited October 31, 2019).

47.     Once identified through discovery, all individual(s) responsible for the false intellectual property complaints described below will be added as defendants in this action.

48.     For example, on or about September 30, 2019, Plaintiff received a notice from Amazon stating as follows:

```
Hello,

We received a report from a rights owner that you are listing
counterfeit products. Sellers on Amazon.com are not allowed to create
listings or detail pages for counterfeit goods.
```

We removed the content listed at the end of this email. We may let you
list this product again if we receive a retraction from the rights
owner. Their contact information can be found below.

Pure Brazilian Compliance
lossprevention@purebrazilian.com

If the rights owner agrees to retract their complaint, they must send
the retraction to us at notice-dispute@amazon.com.

If you believe that the reported content is not counterfeit, you may
email notice-dispute@amazon.com. with supporting information.

If the rights owner does not retract their complaint, or you do not
provide supporting information, we may provide your contact information
to the rights owner upon their request.

We consider allegations of counterfeit a serious matter and your
account is under review. If we receive more complaints about your
listings, we may not allow you to sell on Amazon.com.

To learn more about this policy, search for "Intellectual Property
Violations" in Seller Central Help.

ASIN: B00BQ1Y9CW
Title: Pure Brazilian - Anti Frizz Daily Shampoo - Salt-Free, Color
Safe, With Keratin, Argan Oil, and Acai (13.5 Fl. Ounces / 400
Milliliter)

Infringement type: Counterfeit
Complaint ID: 6477590771

Sincerely,

Seller Performance Team
https://www.amazon.com

49.    The above report relates to a Pure Brazilian Product, which is referenced by its

Amazon Standard Identification Numbers ("ASIN").

50.    The Pure Brazilian Product identified as "counterfeit" in the above report was

genuine.

51.    The Pure Brazilian Product identified as "counterfeit" in the above report was

manufactured and distributed by Defendants.

52.     On information and belief, prior to filing the above report, Defendants did not bother to perform a test purchase because they knew that there were no "counterfeits" in the marketplace.

53.     On information and belief, Defendants' allegation that the above Pure Brazilian Products were counterfeit was knowingly false and made in bad faith.

54.     In total, Defendants submitted at least *four complaints* to Amazon, each resulting in the suspension of Plaintiff's ability to sell Pure Brazilian Products.  Each of these complaints to Amazon are listed below:

| Complaint ID | ASIN(s) | Allegation |
|---|---|---|
| 6456935591 | B01K5QOGBC | Counterfeit |
| 6462559361 | B00MC26T6I | Counterfeit |
| 6466944311 | B00BQ26AAU | Counterfeit |
| 6477590771 | B00BQ1Y9CW, B01IE09GZM, B00M9EUHW6 | Counterfeit |

55.     The Pure Brazilian Products identified as "counterfeit" in each of the above reports were genuine.

56.     The Pure Brazilian Products identified as "counterfeit" in each of the above reports were manufactured and distributed by Defendants.

57.     On information and belief, prior to filing the above reports, Defendants knew, or should have known, that the products were not counterfeit.

58.     On information and belief, Defendants' allegations that the above Pure Brazilian Products were counterfeit was knowingly false and made in bad faith.

**DEFENDANTS RESFUSED TO RETRACT THEIR FALSE REPORTS**

59.     For the past several months, Plaintiff has sought in good faith to resolve the above complaints with Defendants.  Defendants, despite having no support for their allegations, have refused to retract their baseless complaints.

60.     On or about October 17, 2019, counsel for Plaintiff sent correspondence to Defendants requesting support for its allegations of trademark counterfeiting or, in the alternative, a withdrawal of the complaints.  Defendants did not respond.

61.     Follow up correspondence was sent by counsel for Plaintiff on or about October 30, 2019, however, Defendants did not respond.

62.     To date, Defendants have failed to provide support for their allegations that Plaintiff has sold "counterfeit" Pure Brazilian Products.  Yet, Defendants have refused to retract their complaints.

**HARM TO PLAINTIFF**

63.     As a result of the above false rights complaints, Plaintiff's listings relating to Pure Brazilian Products were suspended, resulting in an immediate loss of revenue.

64.     It is well-known that complaints to Amazon put Amazon sellers in jeopardy of a full selling suspension, meaning that Plaintiff's ability to sell any and all products on Amazon would be lost.

65.     On information and belief, Defendants were aware that complaints to Amazon, particularly those alleging the sale of counterfeit products, result in selling suspensions.

66.     On information and belief, Defendants have used these same tactics, namely filing false infringement complaints, against numerous other Amazon sellers.

67.     At no time has Plaintiff ever sold counterfeit Pure Brazilian Products.

68.     The Pure Brazilian Products sold by Plaintiff were, at all times, authentic products bearing the name of the manufacturer, and were otherwise, at all times, sold lawfully.

69.     Defendants knowingly made a false intellectual property rights complaint against Plaintiff.

70.     Defendants knowingly published false and defamatory reviews to Amazon.

71.     Upon information and belief, the true purpose of these was to ensure the suspension of Plaintiff's marketplace listings, control pricing and eliminate fair competition.

72.     As result of Defendants' false complaints, Plaintiff's performance metrics were irreparably damaged.

73.     It is well-known that as much as 90% of all Amazon sales occur from Amazon's "buy box," a section of an Amazon product detail page where customers can add a product to their cart.

74.     Amazon determines which seller gets the "buy box" based on a number of factors, including the seller's performance metrics.

75.     Defendants' false complaints and reviews have damaged Plaintiff's metrics and caused Plaintiff to lose the "buy box" on many of its product listings.

76.     As result of Defendants' false complaints, Amazon denied Plaintiff access to a routine loan.  In the denials, Amazon specifically cited the reports submitted by Defendants as the basis for Amazon's refusal to grant the loan.

## COUNT I - DECLARATORY JUDGMENT
### (No Trademark Infringement or Counterfeiting)

77.     Plaintiff realleges and incorporates all previous paragraphs.

78.     Defendants manufacture and Distribute Pure Brazilian Products and place such products into the stream of commerce.

79.     Plaintiff stocks, displays, and resells new, genuine Pure Brazilian Products, each bearing a true mark.

80.     Defendants have submitted one or more complaints to Amazon that state that Plaintiff sold counterfeit Pure Brazilian Products and infringed, inter alia, one or more of the PURE BRAZILIAN Registration.

81.     The Pure Brazilian Products sold by Plaintiff were not counterfeit.

82.     Defendants' complaints have caused the suspension of Plaintiff's selling privileges as they relate to Pure Brazilian Products.

83.     Defendants' repeated complaints threaten to cause the suspension of Plaintiff's selling privileges as they relate to any and all products.

84.     Defendants' complaints put Plaintiff in jeopardy of permanent suspension of all selling privileges, which will cause extraordinary, irreparable, and untold damage on a business that is in the virtually exclusive business of selling products on e-commerce platforms.

85.     Under these facts, an actual controversy exists between Plaintiff and Defendants.

86.     Plaintiff is entitled to a declaratory judgment that it has not sold counterfeit Pure Brazilian Products.

87.     Plaintiff is entitled to a declaratory judgment that it has not violated Defendants' trademark rights or other rights, whether under Federal or State law.

### COUNT II – FALSE OR MISLEADING REPRESENTATION AND UNFAIR COMPETITION PURSUANT TO 15 U.S.C. § 1125

88.     Plaintiff realleges and incorporates all previous paragraphs.

89.     This is a claim for false or misleading representation of fact and unfair competition under 15 U.S.C. § 1125(a).

90.     Plaintiff and Defendants compete for sales of hair care products.

91.     Plaintiff has a commercial interest in its commercial and business reputation.

92.     Plaintiff has established a business reputation as a popular and trusted seller of consumer products on Amazon's marketplace.

93.     Defendants have knowingly made false, misleading, and defamatory statements in commerce through Amazon's infringement reporting tools relating to the products associated with Plaintiff. These statements actually deceived Amazon and are likely to deceive and confuse the public (i.e., Amazon's marketplace users) into believing that Plaintiff's products are counterfeit, thereby materially effecting their decision and ability to purchase Plaintiff's products.

94.     Defendants' reports to Amazon were designed to advance their business interests by removing Plaintiff's listings from the Amazon marketplace thereby increasing Defendants' market share.

95.     Defendants' false and misleading representations were sufficiently disseminated to actual and prospective customers by way of the reports to Amazon so as to constitute advertising.

96.     Defendants' false and misleading representation of Plaintiff's alleged infringement has misled, confused and deceived customers and prospective customers as to Plaintiff's reputation. Further, these misrepresentations have the capacity to continue misleading, confusing, and deceiving Plaintiff's customers and prospective customers.

97.     The false and misleading representations had a material effect on Plaintiff's customers' and prospective customers' decisions to do business with Plaintiff.

98.     Defendants have made these false and misleading representations in interstate commerce and these false and misleading representations affect interstate commerce.

99.     On information and belief, Defendants had actual knowledge that Defendants had no support for the complaints that Defendants submitted to Amazon in connection with Plaintiff's product, and Defendants acted with the intent that Plaintiff's ability to sell Pure Brazilian Products be removed, thereby forcing consumers to purchase Pure Brazilian Products directly from Defendants and/or select distributors.

100.    Plaintiff's injuries fall within the zone of interest protected by the Lanham Act because Defendants' false advertising and disparaging misrepresentations have caused Plaintiff to suffer a loss of goodwill, a loss of sales, and damage to its commercial and business reputation.

101.    Defendants' wrongful acts as alleged in this Amended Complaint constitute false or misleading representation of fact and unfair competition under 15 U.S.C. § 1125(a).

102.    The damage to Plaintiff's economic and reputational injuries were directly caused by Defendants' false and misleading representations.

103.    As a direct and proximate result of Defendants' actions, constituting false or misleading representation of fact and unfair competition, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

104.    As a direct and proximate result of Defendants' actions, constituting false or misleading representation of fact and unfair competition, Plaintiff has suffered and continues to suffer great and irreparable injury, for which Plaintiff has no adequate remedy at law.

105.    Defendants will continue their actions, constituting false or misleading representation of fact and unfair competition, unless enjoined by this Court.

## COUNT III – UNFAIR COMPETITION
## PURSUANT TO THE MARYLAND COMMON LAW

106.    Plaintiff realleges and incorporates all previous paragraphs.

107. This is a claim for unfair competition, arising under the common law of the State of Maryland.

108. By reason of all of the foregoing, Defendants, as a market competitor of Plaintiff, engaged in deceptive conduct by disseminating false and misleading representations that Plaintiff sold counterfeit Pure Brazilian Products.

109. Defendants' conduct caused consumer confusion because it had a material effect on Plaintiff's customers' and prospective customers' decisions and ability to purchase Plaintiff's products or do business with Plaintiff.

110. As a result of Defendants' unfair competition, Plaintiff's customers and prospective customers were actually deceived or are likely to deceived and confused into believing that Plaintiff's products are counterfeit.

111. As a direct and proximate result of Defendants' actions, constituting false or misleading representation of fact and unfair competition, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

112. As a direct and proximate result of Defendants' actions, constituting false or misleading representation of fact and unfair competition, Plaintiff has suffered and continues to suffer great and irreparable injury, for which Plaintiff has no adequate remedy at law.

113. Defendants will continue their actions, constituting false or misleading representation of fact and unfair competition, unless enjoined by this Court.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS

114. Plaintiff realleges and incorporates all previous paragraphs.

115. Plaintiff has had an advantageous business relationship with Amazon, which allows Plaintiff to sell on Amazon's e-commerce platform as a third-party seller.

116.     Plaintiff is also in a contractual relationship with Amazon.

117.     At all relevant times, Defendants were aware of Plaintiff's business relationship with Amazon, as well as Plaintiff's contractual relationship with Amazon.

118.     At all relevant times, Defendants were aware of the terms and conditions of Amazon, as well as the advantageous business relationship that comes with being an Amazon seller.

119.     Defendants intentionally and improperly interfered with Plaintiff's advantageous and contractual relationship with Amazon by complaining, in writing, to Amazon, that Plaintiff was selling counterfeit products.

120.     Defendants' conduct directly and proximately caused disruption of Plaintiff's relationship and contract with Amazon.

121.     Defendants intended to cause Amazon to suspend Plaintiff's ability to sell Pure Brazilian Products on Amazon and therefore interfere with the business relationship Amazon had with Plaintiff.

122.     Defendants had actual knowledge that their actions would cause Amazon to suspend Plaintiff's ability to sell Pure Brazilian Products on Amazon.

123.     Defendants' accusations of counterfeiting, made directly to Amazon, were for the improper purpose of suppressing competition.

124.     Defendants' actions interfered with Plaintiff's business relationship with Amazon and proximately caused Plaintiff's listing of Pure Brazilian Products to be suspended.

125.     The intentions of Defendant are demonstrated by the fact that Defendants were unable to provide any evidence in support of their complaints and, nevertheless, refused to withdraw their complaints.

126.    The intentions of Defendants are demonstrated by the fact that Defendants performed test purchases prior to alleging that the products sold by Plaintiff were counterfeit.

127.    Defendants' accusations were false and were made maliciously and with ill will.

128.    Plaintiff has been damaged by suspension of these listings by losing revenue related to Pure Brazilian Products.

129.    Plaintiff is entitled to damages, costs and attorneys' fees as allowed by law.

130.    Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

## COUNT V – DEFAMATION

131.    Plaintiff realleges and incorporates all previous paragraphs.

132.    Defendants published false statements to Amazon regarding Plaintiff as described in this Complaint, including reporting to Amazon that Plaintiff sold "counterfeit" Pure Brazilian Products.

133.    Plaintiff did not sell counterfeit Pure Brazilian Products.

134.    Defendants' false statements were injurious to Plaintiff's business because they caused Amazon to suspend Plaintiff's selling privileges related to Pure Brazilian Products.

135.    Defendants' false statements were injurious to Plaintiff's business because they caused Amazon's and Plaintiff's customers to avoid purchasing products from Plaintiff.

136.    Upon information and belief, Defendants were, at a minimum, negligent in making the false statements to Amazon because, among other things, Defendants knew that Plaintiff sells genuine products.

137.    Defendants' false statements are not protected by any privilege.

138.    Defendants acted with actual malice or with reckless disregard for the truth of the matter contained in Defendants' false statements to Amazon and Plaintiff's customers.

139.   False statements that are directed to the honesty, efficiency, or other business character traits amount to defamation per se.

140.   Here, Defendants published statements that Plaintiff was engaged in trademark counterfeiting, which is a criminal offense.

141.   Defendants' false statements constitute defamation per se.

142.   Additionally, Plaintiff incurred special harm, including, but not limited to, suspension from selling Pure Brazilian Products and damage to its relationship with Amazon and its customers.

143.   Whether by defamation per se or by special harm, Plaintiff has suffered injury as Plaintiff's selling privileges related to Pure Brazilian Products have been suspended and Plaintiff has lost sales of Pure Brazilian Products and other products.

144.   Plaintiff is entitled to damages, costs, and fees as allowed by law.

145.   Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

## COUNT VI – TRADE LIBEL

146.   Plaintiff realleges and incorporates all previous paragraphs.

147.   Defendants knowingly published false and derogatory statements regarding Plaintiff's business.

148.   Specifically, Defendants published false and materially derogatory statements that Plaintiff was selling counterfeit Pure Brazilian Products.

149.   Defendants' statements that Plaintiff was selling counterfeit Pure Brazilian Products were calculated to prevent others (including Amazon and Amazon's customers) from doing business with Plaintiff and interfered with Plaintiff's business relationships with these parties.

150.    As discussed above, on information and belief, Defendants knew that submitting false complaints to Amazon would cause Amazon to suspend Plaintiff's product listings.

151.    Defendants' false and derogatory statements to Amazon were a substantial factor in inducing these parties not to conduct business with Plaintiff.

152.    Plaintiff suffered special damages as a result of Defendants' statements in the form of lost dealings.

153.    As a result of Defendants' false rights owner complaint, Plaintiff's product listings were removed from Amazon resulting in a direct and immediate loss in revenue.

154.    As a result of Defendants' false reviews, Plaintiff has had experienced a direct and immediate loss in revenue.

155.    Plaintiff is entitled to damages, costs, and fees as allowed by law.

156.    Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for judgment as follows:

A.    An order declaring that Plaintiff has not infringed any valid and enforceable intellectual property right owned by Defendants;

B.    Preliminary and permanent injunctive relief restraining Defendants, their agents, servants, employees, successors and assigns, and all others in concert and privity with Defendants, from filing false complaints with Amazon and any other e-commerce platform.

C.    Injunctive relief requiring Defendants to rescind all complaints that they have filed against Plaintiff;

D.    An award of all damages that Plaintiff has suffered as a result of Defendants' false representations and unfair competition;

E.     An award of all damages that Plaintiff has suffered as a result of Defendants'

tortious interference;

F.     An award of all damages that Plaintiff has suffered as a result of Defendants'

defamation;

G.     An award of all damages that Plaintiff has suffered as a result of Defendants'

trade libel;

H.     An award of all costs and fees incurred in this Action; and

I.     Such other and further relief as the Court shall find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited

to, those issues and claims set forth in any amended complaint or consolidated action.


Dated: December 18, 2019                    Respectfully submitted,

                                            _s/_ Julie A. Hopkins_____

Mark Berkowitz (Of Counsel)                  Julie A. Hopkins (Bar No. 28025)
AMSTER, ROTHSTEIN & EBENSTEIN LLP            HOPKINS IP, LLC
90 Park Avenue                               6 E. Eager Street, Suite 380
New York, NY 10016                           Baltimore, MD 21202
Telephone: (212) 336-8000                    Telephone: (410) 696-3306
Fax:       (212) 336-8001                    E-mail:    jhopkins@hopkins-ip.com
E-mail:    mberkowitz@arelaw.com
*Pro Hac Vice to be Filed*


***Attorneys for Plaintiff Big Birds, LLC***