**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| BIG BIRDS, LLC, <br><br>                  Plaintiff, <br><br>        v. <br><br> CC BEAUTY COLLECTION INC., et. al.; <br><br>              Defendants. | Civil Action No. 1:19-cv-03594-GLR |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION,
LACK OF SUBJECT MATTER JURISDICTION, AND FOR FAILURE TO STATE A
CLAIM OR, IN THE ALTERNATIVE, TO TRANSFER**

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND ..................................................................................2

       A.     The Parties ................................................................................................2

       B.     Procedural History ...................................................................................3

       C.     Defendants' Filing of False Intellectual Property Complaints ...............4

III.   LEGAL STANDARD.............................................................................................6

IV.    THE *NOERR-PENNINGTON* DOCTRINE IS INAPPLICABLE TO
       DEFENDANTS' FALSE REPRESENTATIONS TO AMAZON.....................7

       A.     *Noerr-Pennington* Is an Affirmative Defense That Cannot Be Raised at the
              Pleading Stage ..........................................................................................9

       B.     Even If Applicable, the Sham Litigation Exception Applies.................10

V.     PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR ALL COUNTS.............13

       A.     The Amended Complaint Plausibly Alleges That Each of the Defendants
              Participated in Coordinated Tortious Activities With Respect to All
              Counts .....................................................................................................13

       B.     Plaintiff Has Sufficiently Alleged a "Case or Controversy" for a
              Declaratory Judgment (Count I) .............................................................16

       C.     Plaintiff Has Stated a Lanham Act Section 43(a) Claim (Count II) ....................18

              1.     Defendants' Statements Qualify as Commercial Speech..........................19

              2.     Defendants' False Advertisements Were Made for the Purpose of
                     Influencing Consumers' Purchasing Decisions .........................................21

              3.     Defendants' Statements Were Sufficiently Disseminated ........................22

       D.     Plaintiff Has Stated a Claim for Unfair Competition Under Maryland
              Common Law (Count III) .......................................................................24

       E.     Plaintiff Has Stated a Claim for Tortious Interference (Count IV) ....................25

              1.     Defendants Do Not Dispute That Plaintiff Has Stated A Claim for
                     Tortious Interference With Business Relations .........................................26

4846-4849-4529v.3

F.       Plaintiff Has Stated Claims for Defamation and Trade Libel
(Counts V-VI) ............................................................................................27

VI.      THE DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION.....................28

A.       Legal Standards for Exercising Personal Jurisdiction ...........................................28

B.       The Court Has Specific Personal Jurisdiction over Defendants ...........................30

C.       To the Extent That This Court Lacks Personal Jurisdiction, This Case
Should Be Transferred to the Southern District of Florida...................................34

VII.     DEFENDANTS' § 1404(a) REQUEST TO TRANSFER SHOULD BE DENIED..........34

VIII.    CONCLUSION...................................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*180s, Inc. v. Gordini U.S.A., Inc.*,
  602 F. Supp. 2d 635 (D. Md. 2009) .................................................................................7, 8

*Advisors Excel, L.L.C. v. Scranton*,
  No. 14-60558-CIV,
  2014 U.S. Dist. LEXIS 199141 (S.D. Fla. Sep. 15, 2014).....................................................20

*Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*,
  650 A.2d 260 (Md. 1994) ......................................................................................................26

*Allstate Indem. Co. v. Overturf*,
  No. GJH-14-466,
  2015 U.S. Dist. LEXIS 34501 (D. Md. Mar. 19, 2015)..........................................................29

*Arris Grp., Inc. v. British Telecomms. PLC*,
  639 F.3d 1368 (Fed. Cir. 2011).......................................................................................16, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................6

*Baltimore Bedding Corp. v. Moses*,
  34 A.2d 338 (1943).................................................................................................................24

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007).......................................................................................................6, 15

*Black & Decker Inc. v. Pro-Tech Power Inc.*,
  No. 97-1123-A,
  1997 U.S. Dist. LEXIS 23999 (E.D. Va. Dec. 23, 1997) ..........................................7, 8, 18, 19

*Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc.*,
  888 F. Supp. 2d 718 (M.D.N.C. 2012) ..................................................................................22

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017)...........................................................................................................29

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...............................................................................................................29

*Calder v. Jones*,
  465 U.S. 783 (1984)...............................................................................................................32

*Cannella v. Brennan*,
   No. 2:12-CV-1247,
   2014 U.S. Dist. LEXIS 107944 (E.D. Pa. Aug. 5, 2014)......................................................20

*In re Cardizem CD Antitrust Litig.*,
   105 F. Supp. 2d 618 (E.D. Mich. 2000)...............................................................................11

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs, Inc.*,
   334 F.3d 390 (4th Cir. 2003) ...............................................................................................28

*Central Hudson Gas and Electric Corp. v. Pub. Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980)..............................................................................................................19

*Citi Trends, Inc. v. Coach Inc.*,
   No. RDB-17-1763,
   2018 U.S. Dist. LEXIS 19296 (D. Md. Feb. 6, 2018) ...........................................................16

*CSPC Dophen Corp. v. Zhixiang Hu*,
   No. 2:17-cv-1895,
   2019 U.S. Dist. LEXIS 196982 (E.D. Cal. Nov. 12, 2019) ....................................................7

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..............................................................................................................29

*Display Works, LLC v. Pinnacle Exhibits, Inc.*,
   No. WMN-15-2284,
   2015 U.S. Dist. LEXIS 158346 (D. Md. Nov. 24, 2015) .................................................18, 24

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
   514 F.3d 1063 (10th Cir. 2008) ..............................................................................31, 32, 33

*Eastman Chem. Co. v. PlastiPure, Inc.*,
   775 F.3d 230 (5th Cir. 2014) ...............................................................................................18

*Edmonson v. Eagle Nat'l Bank*,
   922 F.3d 535 (4th Cir. 2019) .................................................................................................6

*Fessler v. IBM*,
   No. 18-2497,
   2020 U.S. App. LEXIS 15481 (4th Cir. May 14, 2020) .........................................................6

*Gallman v. Sovereign Equity Grp., Inc.*,
   No. AW-11-2750,
   2012 U.S. Dist. LEXIS 68738 (D. Md. May 14, 2012).........................................................15

*Garlock Sealing Techs., LLC v. Bartlett*,
   No. 3:14-cv-116,
   2015 U.S. Dist. LEXIS 117028 (W.D.N.C. Sept. 2, 2015) ....................................................9

iv

*Garmon Corp. v. Vetnique Labs, LLC*,
No. 19 C 8251,
2020 U.S. Dist. LEXIS 108603 (N.D. Ill. June 22, 2020) ....................................................23

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
362 F.3d 1367 (Fed. Cir. 2004)............................................................................................7

*Goodman v. Praxair, Inc.*,
494 F.3d 458 (4th Cir. 2007) (en banc) ..............................................................................9

*Hall v. DIRECTV, LLC*,
846 F.3d 757 (4th Cir. 2017) ..............................................................................................6

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
No. C14-0950,
2014 U.S. Dist. LEXIS 160980 (W.D. Wash. Nov. 17, 2014) ..............................................10

*Helsel v. Tishman Realty & Constr. Co.*,
198 F. Supp. 2d 710 (D. Md. 2002) ..............................................................................34, 35

*I-Minerals USA, Inc. v. Zielke*,
No. 1:15-cv-00094,
2015 U.S. Dist. LEXIS 123686 (W.D.N.C. Sept. 16, 2015) ...................................................9

*Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*,
164 F. Supp. 3d 1117 (D. Minn. 2016) ...............................................................................9

*JHRG LLC v. StormWatch, Inc.*,
No. 1:09CV919,
2011 U.S. Dist. LEXIS 81823 (M.D.N.C. July 26, 2011) ....................................................30

*Kent Constr. Co. v. Global Force Auction Grp., LLC*,
No. TJS-12-2839,
2015 U.S. Dist. LEXIS 120516 (D. Md. Sept. 10, 2015) .....................................................15

*Laureate Educ., Inc. v. Megahed*,
No. AW-10-749,
2010 U.S. Dist. LEXIS 65709 (D. Md. July 1, 2010)............................................................29

*Leading Tech. Composites, Inc. v. MV2, LLC*,
No. CCB-19-1256,
2019 U.S. Dist. LEXIS 174829 (D. Md. Oct. 8, 2019)...........................................................9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)............................................................................................................18

*Lucey v. Chesapeake Appalachia, LLC*,
786 F. App'x 394 (4th Cir. 2020) .........................................................................................6

v

*Malibu Media, LLC v. Doe*,
  No. PWG-13-365,
  2014 U.S. Dist. LEXIS 174225 (D. Md. Dec. 16, 2014) ........................................................15

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ......................................................................................................16, 17

*MedServ Int'l, Inc. v. Rooney*,
  No. AW-05-3173,
  2006 U.S. Dist. LEXIS 105059 (D. Md. June 28, 2006) ........................................................25

*Millenium Labs., Inc. v. Universal Oral Fluid Labs., Ltd. Liab. Co.*,
  No. 8:11-cv-1757,
  2012 U.S. Dist. LEXIS 194457 (M.D. Fla. Aug. 2, 2012) ....................................................22

*Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*,
  No. 16 Civ. 3645,
  2017 U.S. Dist. LEXIS 114105 (S.D.N.Y. July 21, 2017) ....................................................20

*Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*,
  880 F. Supp. 1005 (S.D.N.Y. 1994) ......................................................................................22

*Mylan Labs., Inc. v. Akzo, N.V.*,
  2 F.3d 56 (4th Cir. 1993) ....................................................................................................28

*Mylan Labs, Inc. v. Matkari*,
  7 F.3d 1130 (4th Cir. 1993) ..................................................................................................6

*NTP Marble, Inc. v. AAA Hellenic Marble, Inc.*,
  No.: 09-cv-05783,
  2012 U.S. Dist. LEXIS 24671 (E.D. Pa. 2012) ....................................................................20

*Ontel Prods. Corp. v. Zuru Ltd.*,
  No. 17-cv-3658,
  2017 U.S. Dist. LEXIS 165020 (D.N.J. Oct. 4, 2017) ............................................................9

*Otsuka Pharm. Co. v. Torrent Pharms. Ltd.*,
  118 F. Supp. 3d 646 (D.N.J. 2015) ......................................................................................12

*Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*,
  905 F. Supp. 2d 675 (D. Md. 2012) ................................................................................24, 25

*Pactiv Corp. v. Perk-Up, Inc.*,
  No. 08-05072,
  2009 U.S. Dist. LEXIS 72796 (D.N.J. Aug. 18, 2009) ..........................................................12

*Planet Techs., Inc. v. Planit Tech. Grp., LLC*,
  735 F. Supp. 2d 397 (D. Md. 2010) ......................................................................................28

vi

*Porter v. Groat*,
   840 F.2d 255 (4th Cir. 1988) ........................................................................34

*Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993).......................................................................................10

*SanDisk Corp. v. STMicroelecs., Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007).....................................................................18

*Saudi v. Northrop Grumman Corp.*,
   427 F.3d 271 (4th Cir. 2005) ........................................................................34

*SB Diversified Prods., Inc. v. Murchison*,
   No. 12cv2328,
   2014 U.S. Dist. LEXIS 112273 (S.D. Cal. July 22, 2014) ....................................17

*Scinto v. Preston*,
   170 F. App'x 834 (4th Cir. 2006) ...................................................................6

*SEC v. Miller*,
   No. TDC-19-2810,
   2020 U.S. Dist. LEXIS 101646 (D. Md. June 10, 2020)......................................35

*Seven–Up Co. v. Coca–Cola Co.*,
   86 F.3d 1379 (5th Cir. 1996) ........................................................................22

*Silverhorse Racing, LLC v. Ford Motor Co.*,
   No. 6:16-cv-53,
   2016 U.S. Dist. LEXIS 185749 (M.D. Fla. Apr. 27, 2016)..............................12, 13

*State Farm Fire & Cas. Co. v. Amazon.com Inc.*,
   407 F. Supp. 3d 848 (D. Ariz. 2019) ..............................................................25

*Taslidzic v. Luther*,
   No. 9:18-CV-80038,
   2018 U.S. Dist. LEXIS 108452 (S.D. Fla. May 21, 2018) ....................................20

*Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*,
   791 F.3d 436 (4th Cir. 2015) ........................................................................35

*Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*,
   358 F. Supp. 2d 475 (D. Md. 2005)................................................................25

*Under Armour, Inc. v. Battle Fashions, Inc.*,
   294 F. Supp. 3d 428 (D. Md. 2018).................................................................30

*Unicorn Global, Inc. v. GoLabs, Inc.*,
   No. 3:19-CV-0754,
   2020 U.S. Dist. LEXIS 48315 (N.D. Tex. Mar. 20, 2020) .................................................23

*VG Innovations, Inc. v. Minsurg Corp.*,
   No. 8:10-cv-1726,
   2011 U.S. Dist. LEXIS 41756 (M.D. Fla. Apr. 18, 2011) ..............................................22

*Vitamins Online, Inc. v. HeartWise, Inc.*,
   207 F. Supp. 3d 1233 (D. Utah 2016)..............................................................................23

*Waugh Chapel S., LLC v. United Food & Commercial. Workers Union Local 27*,
   728 F.3d 354 (4th Cir. 2013) .............................................................................................9

*Weifang Tengyi Jewelry Trading Co. v. Intuii LLC*,
   No. 18 C 4651,
   2019 U.S. Dist. LEXIS 140160 (N.D. Ill. Aug. 19, 2019)............................................11, 12

*Yellow Cab Co. v. Uber Techs., Inc.*,
   No. RDB-14-2764,
   2015 U.S. Dist. LEXIS 109417 (D. Md. Aug. 19, 2015) ...............................................25

**Statutes and Rules**

15 U.S.C. § 1125(a) ...........................................................................................................18, 19

28 U.S.C. § 1404(a) ...........................................................................................................34, 35

28 U.S.C. § 1406(a) .................................................................................................................34

Fed. R. Civ. P. 8(a)(2) ...............................................................................................................6

Fed. R. Civ. P. Rule 12(b)(2) ..................................................................................................28

Fed. R. Civ. P. Rule 12(b)(6) .................................................................................................6, 9

Md. Code Ann. § 6-103 ......................................................................................................28, 30

**Other Authorities**

U.S. Const. Amend. I ............................................................................................................7, 8

U.S. Const. Amend. XIV .............................................................................................28, 29, 32

U.S. Const. Art. III....................................................................................................................16, 17

4846-4849-4529v.3

Plaintiff Big Birds, LLC ("Plaintiff") respectfully submits this Opposition to Defendants CC Beauty Collections Inc. ("CC Beauty"), Performance Brands, Inc. ("Performance"), Christine Medrick ("Medrick"), and Stacy Kaufman's ("Kaufman") (collectively, "Defendants") Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 34, "Motion").

## I.    INTRODUCTION

This case relates to the sale of products on the Amazon.com ("Amazon") platform and, more specifically, to Defendants' interference with Plaintiff's right and ability to resell genuine products on Amazon.  Plaintiff, a Maryland company, buys and resells various consumer products, including through an Amazon storefront.  Defendants manufacture and distribute hair care products under their PURE BRAZILIAN mark ("Pure Brazilian Products").  Last year, Plaintiff listed for sale brand new and genuine Pure Brazilian Products on its Amazon storefront.  In response, Defendants submitted false reports to Amazon stating that Plaintiff's products were "counterfeit," which resulted in the deactivation of Plaintiff's listings and other harm to Plaintiff's seller account.  As detailed in the Amended Complaint, Defendants were well-aware that these representations were false.  Nevertheless, Defendants sought to eliminate their competition and maintain pricing on Amazon, a highly valuable sales channel, through plainly unlawful means.

Plaintiff's 187-paragraph Amended Complaint goes far beyond the requirements of notice pleading—it explains precisely why Plaintiff is entitled to a declaratory judgment of non-infringement, as well as damages for unfair competition (under federal and Maryland law), tortious interference, defamation and trade libel.  Seeking to impose needless delay and cost, Defendants have moved to dismiss each of Plaintiff's six claims.  In each instance, Defendants' Motion follows a predictable pattern—it ignores the dozens of factual statements supporting each claim, asserts that Plaintiff's allegations are "conclusory," and then proffers unsupported attorney argument and speculation. Defendants also expend considerable effort arguing that all of Defendants claims are

1

somehow barred by the *Noerr-Pennington* doctrine.  But Defendants were undoubtedly aware that, in the Fourth Circuit, this doctrine is an affirmative defense whose merits cannot be reached in the context of a motion to dismiss.  In short, Defendants' legal and factual arguments do not support dismissal of any claim of Plaintiff's Amended Complaint.

Defendants also attempt to escape liability for their conduct by arguing that this Court lacks personal jurisdiction over each of them.  This Court has personal jurisdiction over Defendants because they purposefully directed their conduct to Maryland by intentionally submitting false reports to Amazon regarding Plaintiff—while having a reason to know Plaintiff is a Maryland-based company.  Moreover, Defendants should have anticipated that they would be subject to suit in Maryland due to their purposeful availment of the privilege of doing business in Maryland, including "certifying" Maryland salons to carry their products.  Thus, by their own concessions, Defendants are subject to jurisdiction in this Court.

For these reasons, and those discussed below, Defendants' Motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Plaintiff is a Maryland company, which is in the business of lawfully acquiring and re-selling various consumer products through various channels, including through an Amazon storefront.  (ECF No. 33, "Am. Compl." ¶¶ 37–38.)  Since its formation, Plaintiff has served tens of thousands of customers through its Amazon storefront.  (*Id.* ¶ 39.)  Plaintiff's Amazon storefront has amassed over 15,000 reviews and a holds a near-perfect customer rating.  (*Id.* ¶ 51.)

Defendants are in the business of manufacturing and distributing beauty products, including products sold under the PURE BRAZILIAN mark.  (*Id.* ¶ 36.)  More specifically, CC Beauty is the registrant of U.S. Trademark Serial Nos. 87727136 and 85325715 for PURE BRAZILIAN in stylized form ("the PURE BRAZILIAN Registrations").  (*Id.* ¶ 3.)  CC Beauty

2

advertises, offers to sell, sells, and distributes the Pure Brazilian Products.  (*Id.* ¶ 4.)  CC Beauty sells Pure Brazilian Products through various online platforms, including the interactive website located at www.purebrazilian.com.  (*Id.* ¶ 5.)  Defendant Medrick is the President and owner of CC Beauty.  (*Id.* ¶ 9; *see also* Ex. 1[1]; ECF No. 34-1, "Medrick Decl." ¶ 2.)

Pursuant to an agreement with CC Beauty, Defendant Performance manufactures, advertises, and offers to sell Pure Brazilian Products.  (Am. Compl. ¶ 8; *see also* Exs. 2–3.) Defendant Kaufman is the President and owner of Performance and provides professional business services to CC Beauty as an independent contractor.  (Am. Compl. ¶¶ 12–13.)

On behalf of Performance, Kaufman engaged a third-party—Auction Brothers Inc. dba Amazzia ("Amazzia")—for Amazon-related services, including eliminating competition for Pure Brazilian Products and attempting to manipulate the pricing for these products.  (*Id.* ¶¶ 20–22.) Amazzia is believed to own Amazon seller accounts VANITY ONLINE and COZY ZONE, through which Pure Brazilian Products are sold by Defendants on Amazon.  (*Id.* ¶¶ 18, 55.)

### B.    Procedural History

Plaintiff filed its original complaint in this action on December 18, 2019.  (ECF No. 1.)  In response, Defendants filed a motion to dismiss the complaint on February 12, 2020, arguing that the Defendants are not subject to the personal jurisdiction of this Court and that the original complaint failed to state a claim.  (ECF No. 23.)  Plaintiff filed an Amended Complaint (ECF No. 33) on March 4, 2020, which, *inter alia*, added allegations clarifying the activities taken by the various Defendants, and added VANITY ONLINE and COZY ZONE as defendants whose true identities and addresses are presently unknown.[2]  On March 18, 2020, Defendants renewed their

---

[1] All exhibits cited herein are attached to the Declaration of Mark Berkowitz filed herewith.

[2] Amazon prohibits any single entity from operating multiple storefronts.  Accordingly, it is believed that Defendants have created fictious entities in order to evade Amazon's rules.

motion to dismiss, duplicating the arguments made in their original motion. (ECF No. 34.)

### C. Defendants' Filing of False Intellectual Property Complaints

As detailed in the Amended Complaint, Plaintiff brought this action to seek redress for Defendants' interference with Plaintiff's resale of Pure Brazilian Products on Amazon. Defendants, working in concert with the owners of the VANITY ONLINE and COZY ZONE storefronts, have sought to stifle legitimate competition by, *inter alia*, repeatedly submitting false reports to Amazon stating that Plaintiff was selling "counterfeit" Pure Brazilian Products. (Am. Compl. ¶¶ 58–59, 69–70.) Defendants submitted at least four such false reports to Amazon each resulting in the suspension of Plaintiff's ability to sell Pure Brazilian Products. (*Id.* ¶¶ 83–87.)

For example, in September 2019, Plaintiff received a notice from Amazon stating that "Pure Brazilian Compliance," with an e-mail address of lossprevention@purebrazilian.com, had filed a report with Amazon stating that Plaintiff was selling "counterfeit" Pure Brazilian Products. (Am. Compl. ¶ 74.) This report was false and made in bad faith; in reality, the Pure Brazilian Product identified in the report was genuine. (*Id.* ¶¶ 76–79.)

Defendants' false reports were a coordinated effort to control the distribution and pricing of Pure Brazilian Products through unlawful means. The contact information provided in the reports (i.e., lossprevention@purebrazilian.com) is owned by CC Beauty, who maintains the domain purebrazilian.com. (*Id.* ¶ 80.) Amazzia's website states that Amazzia manages the PURE BRAZILIAN brand, and quotes Defendant Kaufman on its website as stating that "Amazzia has grown the Pure Brazilian brand businesses exponentially." (Ex. 4 at 1; *see also* Am. Compl. ¶ 56.)[3]

---

[3] On or around the time that Plaintiff filed its Amended Complaint, Amazzia's website claimed that it manages the PURE BRAZILIAN brand, quoting Defendant Kaufman as the "Managing Partner." (Ex. 5.) Based on such job title, it appears that Amazzia intended to claim that it was managing the PURE BRAZILIAN brand on behalf of Performance; Kaufman testifies that he is the "President" of Performance, and an "independent contractor" for CC Beauty. (ECF No. 34-2, "Kaufman Decl." ¶¶ 2, 10, 19.) Amazzia subsequently revised its website to suggest that it

4

Amazzia's website also claims that "Amazzia removed 100% of Pure Brazilian's unauthorized resellers" on Amazon who were "undermining Pure Brazilian's main distribution strategy" by selling below its "minimum advertised price" requirements.  (Ex. 4 at 1; *see also* Am. Compl. ¶ 57.)  Amazzia's website admits that it and/or the brand owners it advises, such as Defendants, takes action against "unauthorized resellers" on Amazon by "report[ing] the problem [of "unauthorized resellers"] to Amazon" to stop these "[t]hird-party resellers . . . who are undercutting [the brand-owner's] profits."  (Ex. 6; *see also* Am. Compl. ¶ 57.)  Amazzia does not hide the fact that it, and the "Brand managers" of the PURE BRAZILIAN mark universally targeted "unauthorized sellers" like Plaintiff, regardless of whether those "unauthorized sellers" were lawfully reselling genuine product.  (Ex. 4.)  The relationships between the various Defendants indicate that Medrick and Kaufman coordinated with CC Beauty and Performance to direct Amazzia to file false reports against including Plaintiff on Amazon, using CC Beauty's lossprevention@purebrazilian.com e-mail address.  (Am. Compl. ¶¶ 81–82.)

As a result of Defendants' false reports, Plaintiff has suffered monetary and reputational harm, as well as damage to its business relationship with Amazon.  (*Id.* ¶¶ 94–107.)  After Defendants filed their false reports, Plaintiff contacted Amazon in accordance with Amazon's procedures to challenge Defendants' false reports and allegations of counterfeiting, to no avail.  (*Id.* ¶ 88.)  Plaintiff has exhausted all avenues with Amazon, and Amazon has refused to reinstate Plaintiff's Pure Brazilian Product listings on its e-commerce platform in view of Defendants' allegations.  (*Id.* ¶ 89.)  Plaintiff has sought in good faith to resolve the issue with Defendants directly but, despite having no support for their counterfeiting allegations, Defendants have refused

---

manages the PURE BRAZILIAN brand on behalf of CC Beauty, quoting Defendant Kaufman as the "Manager – CC Beauty Collection."  (Ex. 4.)  The fluctuations in the wording on Amazzia's website highlight the close coordination between at least CC Beauty, Performance, and Kaufman.

to retract their baseless complaints.  (*Id.* ¶¶ 90–93.)

## III.   LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, 'a complaint must contain "only enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion," all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader.  *Fessler v. IBM*, No. 18-2497, 2020 U.S. App. LEXIS 15481, at \*10 (4th Cir. May 14, 2020); *Lucey v. Chesapeake Appalachia, LLC*, 786 F. App'x 394, 396 (4th Cir. 2020); *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

After "assum[ing] the veracity" of these factual allegations, the court is to "determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.  Moreover, the complaint must be construed "liberally."  *Hall v. DIRECTV, LLC*, 846 F.3d 757, 761 (4th Cir. 2017).  "[W]hen a court reviews the sufficiency of a complaint, the issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scinto v. Preston*, 170 F. App'x 834, 836 (4th Cir. 2006).  "Although it is true that the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests."  *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 552 (4th Cir. 2019).  Thus, a "complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and that a recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556[4]; *Mylan Labs.*, 7 F.3d at 1134.

---

[4] All internal quotations, citations, and modifications are omitted herein unless otherwise indicated.

## IV.   THE *NOERR-PENNINGTON* DOCTRINE IS INAPPLICABLE TO DEFENDANTS' FALSE REPRESENTATIONS TO AMAZON

Defendants first assert the *Noerr-Pennington* doctrine, arguing that the false counterfeiting reports they submitted to Amazon constitute petitioning activities and, therefore, cannot be attacked by ***any*** of Plaintiff's claims. Defendants' argument is both factually and legally meritless.[5]

The *Noerr-Pennington* doctrine provides immunity from liability for exercising one's First Amendment right to petition the government or the courts. *See 180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 640 (D. Md. 2009). The *Noerr-Pennington* protections have also been applied to pre-litigation communications, including warnings of potential litigation and efforts to compromise the dispute. *See Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1376 (Fed. Cir. 2004). ***But, in this Circuit, only activity that "is really a part of the litigation process" is "potentially protected by the Noerr-Pennington doctrine."*** *Black & Decker Inc. v. Pro-Tech Power Inc.*, No. 97-1123-A, 1997 U.S. Dist. LEXIS 23999, at *10 (E.D. Va. Dec. 23, 1997). Here, Plaintiff alleges that Defendants made false statements (***having nothing to do with any lawsuit or legal proceeding***) about Plaintiff's products to a third-party (i.e., Amazon). (*See, e.g.*, Am. Compl. ¶¶ 54–89.) Thus, *Noerr-Pennington* is inapplicable.

As detailed in the Amended Complaint, Defendants made false counterfeiting representations to Amazon for the purpose of improperly controlling the pricing and distribution of their products on the Amazon platform, (Am. Compl. ¶ 54), not in connection with litigation or for any legitimate purpose. Thus, contrary to Defendants' arguments (*see* Mot. at 21), the false

---

In addition, all emphasis is added herein unless otherwise indicated.

[5] Defendants do not even bother to explain how the *Noerr-Pennington* doctrine is applicable to each of Plaintiff's claims. For example, the doctrine is not typically applied to declaratory judgment, defamation or trade libel claims. *See, e.g.*, *CSPC Dophen Corp. v. Zhixiang Hu*, No. 2:17-cv-1895, 2019 U.S. Dist. LEXIS 196982, at *7 (E.D. Cal. Nov. 12, 2019) (finding "no authority for applying the *Noerr-Pennington* doctrine to plaintiff's defamation claim").

7

reports are issue here is not the type of conduct barred by the *Noerr-Pennington* doctrine.  *See Black & Decker*, 1997 U.S. Dist. LEXIS 23999, at *11 ("[T]he claims that Black & Decker made false statements about Pro-Tech's miter saws (separate from bringing the lawsuit) are not the type of petitioning activity protected by the *Noerr-Pennington* doctrine.").

In fact, this Court rejected the exact same arguments advanced here by Defendants and **expressly refused to extend the Noerr-Pennington to the types of communications at issue here.** In *Gordini*, the defendant counterclaimed against the plaintiff for tortious interference based on allegedly false representations of intellectual property infringement made by the plaintiff to defendant's retailers.  *Id.* at 638.  The plaintiff moved to dismiss were protected by *Noerr-Pennington* as an "extension" of statements made in a lawsuit.  *Id.* at 641.  The Court soundly rejected these arguments, finding that "[t]he conduct alleged by Gordini is not the type of First Amendment activity protected by the *Noerr-Pennington* doctrine." *Id.*  Unbelievably, Defendants cite to *Gordini* (Mot. at 21), but fail to address or mention its directly contrary holding.

Notably, Defendants do not assert that they were threatening Amazon with litigation (of course, Defendants would not dare risk **their** relationship with Amazon).  (Mot. at 20–22.) Undercutting their entire argument, Defendants concede that "none of the Defendants threatened an infringement or dilution suit against Plaintiff."  (*Id.* at 16.) Rather, Plaintiff asserts that Defendants made knowingly false statements about Plaintiff and its products that were libelous, anticompetitive and interfered with Plaintiff's business relationships.  Defendants' unsupported arguments that "there was a basis and good faith belief that CC Beauty's rights were being infringed" (*id.* at 22) are contrary to the factual allegations in the Amended Complaint, which must be accepted at the pleading stage. (Am. Compl. ¶ 87 (alleging that "Defendants' allegations that the above Pure Brazilian Products were counterfeit was knowingly false and made in bad faith.").)

8

In short, submitting false reports of counterfeiting to a third-party (i.e., Amazon) for illicit purposes is not a form of petitioning that the *Noerr-Pennington* doctrine was intended to protect and this Court should decline Defendants' invitation to extend the doctrine simply to suit Defendants' current needs. *See Ontel Prods. Corp. v. Zuru Ltd.*, No. 17-cv-3658, 2017 U.S. Dist. LEXIS 165020, at *7 (D.N.J. Oct. 4, 2017) ("Defendants have failed to demonstrate how their communications to third-party retailers, regarding intellectual property rights litigation is akin to a doctrine that protects conduct between competitors when petitioning government."); *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 164 F. Supp. 3d 1117, 1132 (D. Minn. 2016) (finding no authority "supporting the extension of *Noerr-Pennington* to scenarios where those receiving the communications were third parties not directly threatened with litigation").

### A.    *Noerr-Pennington* Is an Affirmative Defense That Cannot Be Raised at the Pleading Stage

In the Fourth Circuit "the *Noerr-Pennington* doctrine is an affirmative defense." *Waugh Chapel S., LLC v. United Food & Commercial. Workers Union Local 27*, 728 F.3d 354, 359–60 (4th Cir. 2013); *I-Minerals USA, Inc. v. Zielke*, No. 1:15-cv-00094, 2015 U.S. Dist. LEXIS 123686, at *10 (W.D.N.C. Sept. 16, 2015).  And, a Rule 12(b)(6) motion, "which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense . . . ." *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc).

Thus, "dismissal based on the assertion of the *Noerr-Pennington* affirmative defense inappropriate at this stage in the proceedings." *I-Minerals USA*, 2015 U.S. Dist. LEXIS 123686, at *12; *see also Garlock Sealing Techs., LLC v. Bartlett*, No. 3:14-cv-116, 2015 U.S. Dist. LEXIS 117028, at *7 (W.D.N.C. Sept. 2, 2015); *Leading Tech. Composites, Inc. v. MV2, LLC*, No. CCB-19-1256, 2019 U.S. Dist. LEXIS 174829, at *11 n.3 (D. Md. Oct. 8, 2019).

Presumably aware of this fatal flaw in their argument, Defendants rely exclusively on cases

from outside of the Fourth Circuit.  Specifically, Defendants cite to a non-precedential Ninth Circuit case, *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, to argue that "the *Noerr-Pennington* doctrine [has been applied] to a manufacturer's submission of a counterfeit complaint to Amazon" at the pleading stage. (Mot. at 21.)  But, as discussed, such a dismissal is impermissible under Fourth Circuit law. Moreover, in *Hard 2 Find Accessories*, the court equated the notice of intellectual property infringement submitted to Amazon in that case with a "cease-and-desist letter." *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, No. C14-0950, 2014 U.S. Dist. LEXIS 160980, at *5 (W.D. Wash. Nov. 17, 2014).  It is unknown if the notice at issue in that case was even similar in form to the false reports submitted by Defendants to Amazon (or whether it was, in fact, a legal demand letter).  As discussed, the Defendants' submissions to Amazon here did not threaten litigation, nor is there any allegation that Defendants subsequently took any action against Amazon (or anyone else).  The cases cited by Defendants therefore miss the mark.

### B.      Even If Applicable, the Sham Litigation Exception Applies

Even if the false Amazon reports were somehow considered pre-litigation conduct (they are not), the "sham litigation" exception is readily invoked here.  Specifically, parties who file "sham litigation" are excepted from the benefit of *Noerr-Pennington* immunity.  *See Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993).  An allegation of sham litigation consists of two elements: (1) "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) "the baseless lawsuit [must] conceal[] an attempt to interfere *directly* with the business relationships of a competitor," rather than reflect a legitimate effort to obtain judicial review.  *Id.*

Plaintiff has alleged that Defendants' counterfeit assertions were "objectively unreasonable sham submissions made in bad faith in an effort to prevent Plaintiff's resale of genuine Pure Brazilian Products on Amazon's e-commerce platform."  (Am. Compl. ¶ 70.)  In support, Plaintiff

10

pled that Defendants made infringement assertions to a third-party (i.e., Amazon) regarding the Pure Brazilian Products sold by Plaintiff despite the facts that: (1) the Pure Brazilian Products identified to Amazon as "counterfeit" were "manufactured and distributed by Defendants"; (2) "there were no [known]'counterfeits' in the marketplace; (3) Defendants made repeated and systematic assertions of counterfeiting to Amazon while knowing that these assertions were false; and (4) to date, have offered no support for their allegations of counterfeiting (despite repeated requests). (*Id.* ¶¶ 77–78, 83, 93.) Further, the Amended Complaint alleges that Defendants false representations were made for the purpose of interfering with Plaintiff's business relationship with Amazon (and Amazon's customers), as opposed to any legitimate purpose. (*Id.* ¶¶ 54–57.)

Defendants do not address these allegations and pointlessly assert that "Plaintiff pleads . . . a bare, conclusory, and purely legal conclusion, i.e. that the complaint at issue was a "sham." (Mot. at 22.) That is obviously not the case. Consequently, even if applicable, the *Noerr-Pennington* doctrine does not require dismissal. *See In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 643–44 (E.D. Mich. 2000) (denying motion to dismiss where claimant alleged that plaintiff prosecuted the infringement action solely as a basis to exclude the claimant from the market).

In *Weifang Tengyi Jewelry Trading Co. v. Intuii LLC*, No. 18 C 4651, 2019 U.S. Dist. LEXIS 140160 (N.D. Ill. Aug. 19, 2019), the district court found allegations virtually identical to those raised here more than enough to avoid dismissal at the pleading stage. There, the plaintiff brought suit (and obtained a TRO) against the defendant based on allegations of trademark counterfeiting. The defendant counterclaimed for abuse of process and raised an affirmative defense of trademark misuse. *Id.* at *2. The plaintiff moved to dismiss arguing that the counterclaim and affirmative defense were precluded by *Noerr-Pennington*. The court disagreed, holding that the defendant "has adequately pleaded facts that bring its claims within the sham

lawsuit branch of the sham exception to *Noerr-Pennington*" by alleging that the plaintiff: (1) "performed little to no presuit research to determine whether its complaint's central allegation— that Defendants were . . . selling counterfeit imitations of [plaintiff's] products—applied to [defendant]"; and (2) "acted with the subjective intention of 'interfering directly with the business relationships of a competitor'." *Id.* at *26. Defendants' arguments fail for the same reasons.

Whether a particular set of actions were "objectively and subjectively baseless" require resolution of "inherently factual issues," including consideration of "whether [the defendant] undertook a reasonable investigation in advance of pursuing its infringement claims, whether [the defendant] undertook this action for an improper and anticompetitive purpose, and whether a reasonable litigant could have realistically expected success on the merits at the time of filing." *Otsuka Pharm. Co. v. Torrent Pharms. Ltd.*, 118 F. Supp. 3d 646, 657 (D.N.J. 2015). "All of these determinations require inquiry into issues of fact, which cannot be resolved in the context of a motion to dismiss, and prior to discovery." *Id.*; *Pactiv Corp. v. Perk-Up, Inc.*, No. 08-05072, 2009 U.S. Dist. LEXIS 72796, at *38 (D.N.J. Aug. 18, 2009) (finding, with respect to the objective prong of the sham litigation exception, that "[r]easonableness is a question of fact").

In *Silverhorse Racing*¸ the plaintiff alleged that defendant "embarked on a campaign to contact all retailers and distributors of [plaintiff's] products and advise them that [certain] products . . . were 'counterfeit goods'" (which the plaintiff contended was false). *Silverhorse Racing, LLC v. Ford Motor Co.*, No. 6:16-cv-53, 2016 U.S. Dist. LEXIS 185749, at *3 (M.D. Fla. Apr. 27, 2016). Ford moved to dismiss the complaint arguing that it was immune under the *Noerr-Pennington* doctrine. *Id.* As an initial matter, the court found that the determination of whether the *Noerr-Pennington* doctrine applied "is better suited for summary judgment with a more fully-developed record," rather than at the pleadings stage. *Id.* at *11. Further, the court found that, even

if applicable, the plaintiff adequately pled the sham litigation exception by alleging that defendant "contacted and threatened [plaintiff]'s retailers and distributors by misrepresenting to them that . . . [plaintiff]'s products . . . are counterfeit." *Id.* at *12–13.

Here too, irrespective of the nuances of the *Noerr-Pennington* doctrine, Plaintiff has pled sufficient facts for its claims to proceed to discovery.

## V.   PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR ALL COUNTS

### A.   The Amended Complaint Plausibly Alleges That Each of the Defendants Participated in Coordinated Tortious Activities With Respect to All Counts

With respect to all six causes of action, Defendants argue that the Amended Complaint does not sufficiently place the Defendants on notice as it improperly groups/lumps Defendants together into one category.  (Mot. at 24–27.)  However, the Amended Complaint sufficiently alleges that each of the Defendants engaged in a coordinated effort to preclude Plaintiff from reselling genuine Pure Brazilian Products on online marketplaces by contributing to the filing of false allegations of intellectual property infringement and defamation.

As Defendants acknowledge, the Amended Complaint explains that "[o]n information and belief, Medrick and Kaufman personally directed CC Beauty and Performance to direct Amazzia to file complaints against re-sellers of Pure Brazilian Products, including Plaintiff, on Amazon" (Am. Compl. ¶ 81; Mot. at 25.)  But, contrary to Defendants' arguments, the Amended Complaint does not "impermissibly merge[] CC Beauty, Performance, Ms. Medrick, and Mr. Kaufman into" into one actor.  (Mot. at 25.)  Defendants simply ignore the dozens of allegations in the Amended Complaint that explain Defendants' coordinated scheme and their various roles.

For example, the Amended Complaint explains that CC Beauty is the rights owner of the PURE BRAZILIAN mark and that it advertises and sells Pure Brazilian Products under the mark, including on its website at www.purebrazilian.com.  (Am. Compl. ¶¶ 3–6.)  Defendant Medrick is

13

the President and owner of CC Beauty, and accepts service on behalf of CC Beauty.  (*Id.* ¶¶ 9, 11.)
Based on such roles and responsibilities, Plaintiff alleges that, "[o]n information and belief,
Medrick personally participated in and has willfully and knowingly directed the wrongful acts of
CC Beauty, [described in the Amended Complaint], and such wrongful conduct has been for the
benefit of CC Beauty and for her own individual benefit and gain."  (*Id.* ¶ 10.)

Based on statements made on Performance's website, the Amended Complaint alleges that
"Performance manufactures, advertises, and offers to sell [Pure Brazilian Products]."  (*Id.* ¶ 8; *see
also* Exs. 2–3.)  Kaufman performs work for both Performance (as its President and owner and
agent who accepts service) and CC Beauty (as an independent contractor and records custodian).
(Am. Compl. ¶¶ 12–14, 17.)  In view of Kaufman's shared affiliation with both companies, the
Amended Complaint alleges "[o]n information and belief," that Performance is authorized to sell
Pure Brazilian Products via an agreement with CC Beauty.  (*Id.* ¶ 8.)  Based on Kaufman's roles
and responsibilities for the two companies, the Amended Complaint also alleges "[o]n information
and belief" that Kaufman personally participated in and has willfully and knowingly directed the
wrongful acts of Performance, complained of herein, and such wrongful conduct has been for the
benefit of Performance and for his own individual benefit and gain."  (*Id.* ¶¶ 15–16.)

Amazzia's website quotes Kaufman as stating that Amazzia has grown the Pure Brazilian
brand exponentially.  (*Id.* ¶¶ 56–57; *see also* Exs. 4–5.)  Accordingly, the Amended Complaint
alleges "[o]n information and belief" that Kaufman engaged Amazzia on behalf of Performance
and authorized Amazzia to submit complaints to Amazon regarding the PURE BRAZILIAN
Registrations for the purpose of eliminating competition for Pure Brazilian Products.  (Am. Compl.
¶¶ 20–22, 57.)  And, because the false complaints filed against Plaintiff provided a contact e-mail
address using the purebrazilian.com domain owned by CC Beauty, the Amended Complaint

14

alleges "[o]n information and belief" that CC Beauty also authorized Amazzia to submit complaints to Amazon regarding the PURE BRAZILIAN Registrations. (*Id.* ¶ 82.)

In view of these detailed allegations, Defendants arguments that "the Amended Complaint fails to allege a meaningful connection between the Defendants" or each of their interests in the PURE BRAZILIAN mark (Mot. at 25–27, 11–13) are wholly disingenuous.

With respect to individuals Kaufman and Medrick, the Amended Complaint plausibly alleges their personal participation in the tortious actions performed in the names of CC Beauty and Performance. Kaufman and Medrick may be held individually liable for such torts. *See, e.g.*, *Kent Constr. Co. v. Global Force Auction Grp., LLC*, No. TJS-12-2839, 2015 U.S. Dist. LEXIS 120516, at *8 (D. Md. Sept. 10, 2015) ("[C]orporate officers . . . personally liable for those torts which they personally commit, or which they inspire or participate in."); *Gallman v. Sovereign Equity Grp., Inc.*, No. AW-11-2750, 2012 U.S. Dist. LEXIS 68738, at *15 (D. Md. May 14, 2012) (corporate officer "held personally responsible if he 'personally directed or actively participated").

Nor is it improper for Plaintiff to make allegations "on information and belief." (*See* Mot. at 26.) This Court has expressly explained that "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 U.S. Dist. LEXIS 174225, at *9–10 (D. Md. Dec. 16, 2014). Thus, Plaintiff properly makes allegations "on information and belief" where it "does not have personal knowledge," and provides sufficient factual allegations to support its inferences. *Id.* at *10.

As discussed further below, and demonstrated by Defendants' Motion, the allegations in the Amended Complaint properly give Defendants fair notice of what the claims are and the

grounds on which they rest.  Thus, Defendants' Motion should be denied.

**B.      Plaintiff Has Sufficiently Alleged a "Case or Controversy" for a Declaratory Judgment (Count I)**

In response to Defendants' false reports "to Amazon that state that Plaintiff sold counterfeit Pure Brazilian Products and infringed, *inter alia*, one or more of the PURE BRAZILIAN Registrations," Plaintiff seeks a declaratory judgment that it has not sold counterfeit Pure Brazilian Products or otherwise infringed Defendants' trademark rights.  (Am. Compl. ¶¶ 111, 117–18.) Defendants argue that this Court lacks subject matter jurisdiction to decide this issue, because there is no actual "case or controversy" between the parties.  (Mot. at 15–20.)  However, Defendants ignore the factual allegations in the Amended Complaint and misrepresent the relevant law.

Defendants argue that there cannot be a "case or controversy" because "none of the Defendants threatened an infringement or dilution suit against Plaintiff."  (*Id.* at 16 (citing *Citi Trends, Inc. v. Coach Inc.*, No. RDB-17-1763, 2018 U.S. Dist. LEXIS 19296, at *7–8 (D. Md. Feb. 6, 2018).)  However, Defendants' cited case law does not stand for the proposition that there is only a "case or controversy" sufficient for Article III jurisdiction "if the party seeking the declaratory judgment ***has been threatened*** with an infringement" suit (Mot. at 16 (emphasis in original)); instead, the *Citi Trends* Court ***declined to "assess[] whether there was a sufficient threat of litigation to meet the controversy requirement"*** and opted to use its discretion not to exercise jurisdiction due to evidence of the plaintiff's forum shopping.  *Id.* at *12–19.

Indeed, the United States Supreme Court in *MedImmune* ***rejected*** a "prior, more stringent standard for declaratory judgment standing" that "required a 'reasonable apprehension of imminent suit.'"  *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007)). The *MedImmune* Court established a new standard, whereby an Article III case or controversy exists when "the facts

alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. at 127; *Arris Grp.*, 639 F.3d at 1379 ("[A] specific threat of infringement litigation by the patentee is not required to establish jurisdiction.").

Contrary to Defendants' arguments, assertions of infringement made to third parties like Amazon can illustrate a "case or controversy." For example, in *Arris Group*, the Court of Appeals for the Federal Circuit explained that direct communication between a patent owner and a declaratory plaintiff is not necessary to confer standing. 639 F.3d at 1378; *SB Diversified Prods., Inc. v. Murchison*, No. 12cv2328, 2014 U.S. Dist. LEXIS 112273, at *9 (S.D. Cal. July 22, 2014) ("'direct' assertions of infringement are not required for declaratory jurisdiction"). One scenario that could create declaratory judgment standing is if "a patent holder accuses ***customers*** of direct infringement based on the sale or use of a supplier's equipment . . . and (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." *Arris Grp.*, 639 F.3d at 1375.

Here, the Amended Complaint details how—on four separate occasions—Defendants specifically reported to Amazon that Plaintiff sold counterfeit Pure Brazilian Products. (Am. Compl. ¶¶ 74, 80–83.) Plaintiff "exhausted all avenues with Amazon, and Amazon has refused to reinstate Plaintiff's Pure Brazilian Product listings on its e-commerce platform in view of Defendants' allegations." (*Id.* ¶¶ 88–89.) Plaintiff clearly has adverse legal interests to Defendants; at least because Plaintiff "contends that it has the right to engage in the accused activity without license, an Article III case or controversy [has] arise[n] and [Plaintiff] need not risk a suit for infringement by engaging in the identified activity [i.e., continuing to sell Pure

17

Brazilian Products of the same nature sold on its Amazon listings] before seeking a declaration of its legal rights." *SanDisk Corp. v. STMicroelecs., Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

### C.    Plaintiff Has Stated a Lanham Act Section 43(a) Claim (Count II)

The Lanham Act serves to "protect persons engaged in . . . commerce against unfair competition," which is concerned with "injuries to business reputation and present and future sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 119, 131 (2014). Plaintiff sufficiently pled that Defendants violated the Lanham Act by disseminating false and injurious statements about Plaintiff's business and products.

As relevant here, section 43(a) of the Lanham Act provides that a party who "uses in commerce any . . . false or misleading representation of fact" regarding "any goods or services" is liable to anyone likely to be damaged by that act if that false representation will likely cause confusion, mistake, or deception regarding "commercial activities by another person." 15 U.S.C. § 1125(a)(1). "A statement of fact" cognizable under the Lanham Act is one that is "capable of being proved false." *Eastman Chem. Co. v. PlastiPure, Inc.*, 775 F.3d 230, 235–36 (5th Cir. 2014).

A plaintiff alleging a claim of false advertising in violation of Section 43(a) the Lanham Act must plead: "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services and the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Display Works, LLC v. Pinnacle Exhibits, Inc.*, No. WMN-15-2284, 2015 U.S. Dist. LEXIS 158346, at *6 (D. Md. Nov. 24, 2015).

In *Black & Decker*, the counterclaimant brought a claim under Section 43(a) alleging*, inter alia*, that: (1) intending to deceive and diverts sales away from counterclaimant, Black & Decker informed retailers and other customers that counterclaimant's products infringed Black & Decker's trademarks; and (2) the false representations "caused serious damage to Pro-Tech in the form of

lost sales and harm to goodwill and the business reputation of Pro-Tech." *Black & Decker*, 1997 U.S. Dist. LEXIS 23999, at *4–5.  The court found that these "allegations, taken as true for purposes of the motion, adequately plead a Lanham Act violation."  *Id.* at *7.

Here, Plaintiff similarly alleges that in order to gain a commercial advantage, Defendants repeatedly contacted Plaintiff's e-commerce provider, Amazon, claiming that Plaintiff was selling "counterfeit" Pure Brazilian products.  (Am. Compl. ¶¶ 83–84.)  Plaintiff further alleges that Defendants made these representations despite knowing that there were no counterfeits in the marketplace.  (*Id.* ¶ 78.)  Defendants also assert that Amazon removed, and refused to reinstate, Plaintiff's Pure Brazilian Products from its platform.  (*Id.* ¶¶ 88–89.)  These facts support the inference that Defendants' representations were false, that they misled Plaintiff's primary e-commerce outlet, and that Plaintiff has suffered financial and reputational injury as a result.

Nevertheless, Defendants argue that Plaintiff's Section 43(a) claim should be dismissed because Plaintiff has not adequately alleged that Defendants' false statements to Amazon: (1) were "commercial advertisements"; (2) were disseminated for the purpose of influencing consumers to buy defendant's goods or services and the representations; or (3) "had a tendency to deceive a substantial segment of its audience."  (Mot. at 28–29.)  Defendants are wrong on all counts.

### 1.     *Defendants' Statements Qualify as Commercial Speech*

The Supreme Court has indicated that it would regard as commercial speech any "expression related solely to the economic interests of the speaker and its audience."  *Central Hudson Gas and Electric Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980).  Here, the Amended Complaint expressly alleges that Defendants' notice and statements to Amazon were "designed to advance their business interests by removing Plaintiff's listings from the Amazon marketplace thereby increasing Defendants' market share."  (Am. Compl. at ¶ 125.)  The Amended Complaint further alleges that "Defendants acted with the intent that Plaintiff's ability to sell Pure

Brazilian Products be removed, thereby forcing consumers to purchase Pure Brazilian Products directly from Defendants and/or select distributors." (*Id.* at ¶ 130.) Indeed, Defendants sought the removal of third-party sellers "who are undercutting . . . profits" by selling below a "minimum advertised price." (*Id.* at ¶ 57.) The Amended Complaint does not set forth ***any other conceivable motive*** for Defendant's false statements other than Defendants' economic interests, and thus, qualify as "commercial speech" under the Supreme Court's definitions of the term.

Numerous courts have found that statements made against competitors to gain more market share are sufficient to satisfy the Lanham Act's commercial speech requirements, particularly at the pleading stage. *See Taslidzic v. Luther*, No. 9:18-CV-80038, 2018 U.S. Dist. LEXIS 108452, at *11 (S.D. Fla. May 21, 2018) (finding commercial speech where "the disparaging statements [the defendant] is alleged to have made . . . were intended to increase [Defendant]'s profits"); *Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, No. 16 Civ. 3645, 2017 U.S. Dist. LEXIS 114105, at *17–18 (S.D.N.Y. July 21, 2017) (finding press release misrepresenting competitor's product to be commercial speech); *Advisors Excel, L.L.C. v. Scranton*, No. 14-60558-CIV, 2014 U.S. Dist. LEXIS 199141, at *14 (S.D. Fla. Sep. 15, 2014) (finding commercial speech where disparaging statements were "designed to . . . influenc[e] customers to buy [Defendant's] services, rather than Plaintiff's"); *Cannella v. Brennan*, No. 2:12-CV-1247, 2014 U.S. Dist. LEXIS 107944, at *23–24 (E.D. Pa. Aug. 5, 2014) (parties were direct competitors and defendants conspired to create an anonymous disparaging website); *NTP Marble, Inc. v. AAA Hellenic Marble, Inc.*, No.: 09-cv-05783, 2012 U.S. Dist. LEXIS 24671, at *25–26 (E.D. Pa. 2012) (parties were direct competitors, and defendant attempted to anonymously post negative reviews on several websites).

Here, Defendants direct communication (the false report) was to a third party (Amazon), and had the immediate effect of being widely disseminated to Amazon and Amazon's customers

by lowering Plaintiff's performance ranking, decreasing Plaintiff's consumer visibility, and ultimately deceiving consumers into believing that the Plaintiff is an untrustworthy seller on the Amazon marketplace. If Defendants had *any* evidence or proof to support a claim of infringement against Plaintiff, Defendants would have notified Plaintiff of its alleged conduct through a cease and desist letter or filed action for infringement. Because, however, Defendants had no evidence whatsoever to support any such claims of infringement, Defendants resorted to making false and misleading statements about Plaintiff's products in a calculated effort to have Plaintiff's competing products removed and gain an unfair competitive advantage in the marketplace. The Lanham Act was created to provide redress for this precise conduct.

### 2. Defendants' False Advertisements Were Made for the Purpose of Influencing Consumers' Purchasing Decisions

Plaintiff broadly asserts that "[i]t was not pleaded that [Defendants' false reports to Amazon] w[ere] intended for the general viewing public, nor was it alleged to have attempted to influence a purchase or some other decision." (Mot. at 28.) However, Plaintiff sufficiently alleged that Defendants' false representations were made to deceive Amazon and are likely to deceive and confuse the public (i.e., Amazon's marketplace users) into believing that Plaintiff's products are counterfeit, thereby materially affecting their decision and ability to purchase Plaintiff's products. (Am. Compl. at ¶ 124.) Further, Plaintiff alleged that Defendants' statements (namely, that the Pure Brazilian Products sold by Plaintiff were "counterfeit") were made for the purpose of removing these products from the Amazon marketplace thereby materially affecting the ability of customers and potential customers to purchase Plaintiff's products as well as irreparably tarnishing Plaintiff's reputation with Amazon and users of the Amazon marketplace. (*Id.* ¶¶ 127–30.)

These actions undoubtedly influenced the purchasing decisions of actual and potential consumers of Plaintiff's products and, therefore, constitute commercial advertising or promotion

made for the purpose of influencing consumers to utilize Defendants' services. *See Millenium Labs., Inc. v. Universal Oral Fluid Labs., Ltd. Liab. Co.*, No. 8:11-cv-1757, 2012 U.S. Dist. LEXIS 194457, at \*6, \*15 (M.D. Fla. Aug. 2, 2012) (statements made to "actual and potential customers that they are or would be violating the law by doing business with Defendant"); *Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc.*, 888 F. Supp. 2d 718, 722–23 (M.D.N.C. 2012) (false statements of patent infringement could "deceive and influence" customers' purchasing decisions).

### 3.    *Defendants' Statements Were Sufficiently Disseminated*

Plaintiff alleged that Defendants' false and misleading representations were sufficiently disseminated to the relevant purchasing public to constitute commercial advertising.  (Am. Compl. at ¶ 126.)  "The requisite level of circulation and the relevant purchasing public will vary according to the industry."  *VG Innovations, Inc. v. Minsurg Corp.*, No. 8:10-cv-1726, 2011 U.S. Dist. LEXIS 41756, at \*16 (M.D. Fla. Apr. 18, 2011).  "Where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act."  *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996); *see also Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1020–21 (S.D.N.Y. 1994) (single letter sufficient).

Defendants' Motion attempts to downplay the severity of its communications to Amazon (Mot. at 28–29.)  However, the direct effect of a fraudulent report of "counterfeiting" in the e-commerce industry is significant. As explained in the Amended Complaint, "Amazon is the world's largest online retailer" and "[t]he privilege of selling on Amazon is highly advantageous. . . ."  (Am. Compl. ¶¶ 41, 44.)  Indeed, "[a] significant portion of Plaintiff's business is derived . . . through its Amazon storefront."  (*Id.* ¶ 47.)  Defendants' reports caused Plaintiff's listings relating to Pure Brazilian Products to be removed from the Amazon and continues to jeopardize Plaintiff's Amazon selling privileges.  (Am. Compl. ¶¶ 94–95.)  The notices further

caused Plaintiff's products to become more difficult to find on Amazon and damaged its reputation as a popular and trusted seller. (*Id.* ¶¶ 103–06.) Specifically, "Amazon determines which seller gets the "buy box" based on a number of factors, including the seller's performance metrics." (*Id.* ¶ 105.) "Defendants' false complaints and reviews have damaged Plaintiff's metrics and caused Plaintiff to lose the 'buy box' on many of its product listings." (*Id.* ¶ 106.)

The Amended Complaint further provides that Defendants' false and misleading statements "actually deceived Amazon and are likely to deceive and confuse the public (i.e., Amazon's marketplace users) into believing that Plaintiff's products are counterfeit, thereby materially effecting their decision and ability to purchase Plaintiff's products." (*Id.* at ¶ 124.) The foregoing allegations show dissemination of a false statement directly to Amazon which, in turn, manifested into a dissemination of false information relating to Plaintiff's ranking and product visibility to every actual and potential customer visiting Plaintiff's online product pages.

The repercussions of the takedown notice are therefore vast and devastating to Plaintiff. For this reason, courts have expressly recognized that the submission of false infringement reports to Amazon can constitute commercial advertising or promotion for purposes of Plaintiff's Lanham Act claim. *See, e.g.*, *Garmon Corp. v. Vetnique Labs, LLC*, No. 19 C 8251 , 2020 U.S. Dist. LEXIS 108603, at *17 (N.D. Ill. June 22, 2020) (denying motion to dismiss where moving party alleged to have submitted false reports of patent infringement to Amazon); *Unicorn Global, Inc. v. GoLabs, Inc.*, No. 3:19-CV-0754, 2020 U.S. Dist. LEXIS 48315, at *17 (N.D. Tex. Mar. 20, 2020) (same); *see also Vitamins Online, Inc. v. HeartWise, Inc.*, 207 F. Supp. 3d 1233, 1236 (D. Utah 2016) (alleged review manipulation on Amazon "constitutes commercial advertising" because "that information was disseminated to all . . . potential customers that visited the product pages").

Here, as in the above cases, Plaintiff has pled that Defendants' false reports directly

resulted in lower visibility and ranking of Plaintiff's listings, and were thereby disseminated to any actual or potential customer that sought to purchase Plaintiff's products.  These allegations far exceed the requirements of notice pleading.  *See Display Works, LLC v. Pinnacle Exhibits, Inc.*, No. WMN-15-2284, 2015 U.S. Dist. LEXIS 158346, at *8 (D. Md. Nov. 24, 2015) ("required level of circulation . . . inappropriate [for determination] at the motion to dismiss stage").

### D.    Plaintiff Has Stated a Claim for Unfair Competition Under Maryland Common Law (Count III)

Defendants argue that the Amended Complaint fails to state a claim for unfair competition under the Maryland common law.  These arguments, which ignore all of the relevant allegations, are frivolous.  The common law action for unfair competition exists because "no one . . . is justified in damaging or jeopardizing another's business by fraud, deceit, trickery, or unfair methods of any sort."  *Baltimore Bedding Corp. v. Moses*, 34 A.2d 338, 342 (1943).  "What constitutes unfair competition in a given case is governed by its own particular facts and circumstances . . . subject, only, to the general principle that all dealings must be done on the basis of common honesty and fairness . . . ."  *Id.*  Acts that can constitute unfair competition include those that "substantially interfere[] with the ability to compete . . . or conflict[] with accepted principles of public policy."  *Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 691 (D. Md. 2012).

Defendants argue the "the facts do not support a claim that Defendants engaged in anything other than lawful enforcement of CC Beauty's trademark rights." (Mot. at 30.)  This argument is divorced from reality.  As pled in substantial detail, Defendants have engaged in a concerted effort to interfere with Plaintiff's ability to sell genuine Pure Brazilian Products on Amazon by making ***knowingly false*** representations that Plaintiff's goods were "counterfeit" to eliminate competition for their products on Amazon and manipulate pricing.  (*See supra* Section V.C.).

Defendants' unlawful and deceitful actions have interfered with Plaintiff's ability to fairly

24

compete in the highly dynamic Amazon marketplace and have caused substantial harm to Plaintiff. (Am. Compl. ¶¶ 137–44).  Nothing more is required to state a claim for unfair competition under the Maryland common law. *See, e.g.*, *Yellow Cab Co. v. Uber Techs., Inc.*, No. RDB-14-2764, 2015 U.S. Dist. LEXIS 109417, at *17–18 (D. Md. Aug. 19, 2015) (denying motion to dismiss "[g]iven the expansive scope of unfair competition"); *Paccar Inc.*, 905 F. Supp. 2d at 692 (similar); *MedServ Int'l, Inc. v. Rooney*, No. AW-05-3173, 2006 U.S. Dist. LEXIS 105059, at *10 (D. Md. June 28, 2006) ("allegations of dishonest conduct . . . sufficient to survive a motion to dismiss").

### E.      Plaintiff Has Stated a Claim for Tortious Interference (Count IV)

Defendants have moved to dismiss Plaintiff's claim of intentional interference with contract and business relations on the ground that Plaintiff has failed to allege any breach of contract.  (Mot. 30–31.)  In Maryland, the five elements of intentional interference with contract are: "1) existence of a contract between plaintiff and a third party; 2) defendant's knowledge of that contract; 3) defendant's intentional interference with that contract; 4) breach of that contract by the third party; 5) resulting damages to the plaintiff."  *Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*, 358 F. Supp. 2d 475, 479 (D. Md. 2005).

Defendants raise a host of factual arguments to assert that the first two elements are not alleged here.  First, Defendants argue that "it is not reasonable to draw any inference that any of the Defendants had any knowledge of a contract that Plaintiff had with Amazon."  (Mot. at 31.) This argument is disingenuous.  All Amazon sellers—including Defendants—are subject to the same contractual relationship with Amazon.  (Am. Compl. ¶¶ 18–20, 45); *see also State Farm Fire & Cas. Co. v. Amazon.com Inc.*, 407 F. Supp. 3d 848, 849 (D. Ariz. 2019) (discussing Amazon's "Business Services Agreement").  Thus, Plaintiff sufficiently alleges that "Defendants were aware of . . . Plaintiff's contractual relationship with Amazon."  (Am. Compl. ¶ 148.)

Second, Defendants argue that "Plaintiff has not alleged . . . that Amazon breached its

25

contract with Plaintiff." (Mot. at 31.)  In support, Defendants speculate that "Plaintiff failed to sufficiently prove to Amazon that the product was not counterfeit." (*Id.*)  A review of the paragraphs cited by Defendants finds zero support for this argument.  Rather, the only pertinent allegations demonstrate that "Plaintiff contacted Amazon in accordance with Amazon's procedures and challenged Defendants' false report and allegations of counterfeiting, to no avail." (Am. Compl. ¶ 88.)  Put simply, notwithstanding Plaintiff's attempts to appeal to Amazon for reinstatement by providing the requisite documentation, Defendants' false reports caused Amazon to delist Plaintiff's products in contravention of its Business Services Agreement with Plaintiff.

### 1. *Defendants Do Not Dispute That Plaintiff Has Stated A Claim for Tortious Interference With Business Relations*

Beyond tortious interference with a specific contract, Maryland has long recognized a more general tort of interference with business relations.  *See Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 268 (Md. 1994).  As Defendants acknowledge, Plaintiff has alleged this form of tortious interference as well, but Defendants do not specifically dispute that this cause of action is properly pled.

Briefly, this tort has four elements: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Id*. at 269.  The Amended Complaint alleges that: (1) Defendants "intentionally and improperly" interfered with Plaintiff's, highly valuable, relationship with Amazon by complaining, in writing, to Amazon, that Plaintiff was selling counterfeit products (Am. Compl. ¶ 150, *see also id.* ¶¶ 41–47, 74, 83); (2) Defendants acted with the intent that Plaintiff's ability to sell Pure Brazilian Products on the Amazon platform would be suspended (*id.* at ¶¶ 54–60, 155); (3) Defendants knew that Plaintiff's products were not

26

counterfeit, but acted with specific intent to unfairly suppress competition, unlawfully increase their profits and defame Plaintiff (*Id.* at ¶¶ 54–60, 78, 79, 86, 87); and (4) Defendants caused actual damage to Plaintiff, including monetary losses, harm to their Amazon selling account, and even denial of a routine loan (*id.* at ¶¶ 94–107.)  Defendants were not simply acting lawfully in pursuit of their own business interests—they knowingly and intentionally made false and defamatory statements in an effort to harm Plaintiff.  Tellingly, despite the fact that the relevant events took place nearly nine months ago, Defendants have failed to provide any support for their representations to Amazon, either before or after the commencement of this lawsuit.

Thus, as Defendants have now conceded, the Amended Complaint states a claim for tortious interference with business relations.

### F.    Plaintiff Has Stated Claims for Defamation and Trade Libel (Counts V-VI)

Defendants argue that Plaintiff's claims for defamation and trade libel should be dismissed because the Amended Complaint does not "sufficiently allege the time, place, content, speaker, and listener" of the Defendants' defamatory and libelous statements. (Mot. at 31–33.)  As par for the course, Defendants discuss only Paragraph 163 of the Amended Complaint (*id.* at 32)—which states that "Defendants published false statements to Amazon regarding Plaintiff as described in this Amended Complaint, including reporting to Amazon that Plaintiff sold 'counterfeit' Pure Brazilian Products"—and ignore the remaining allegations.  The Amended Complaint specifically identified at least four false statements made to Amazon—referenced by "Complaint ID" and the "ASIN(s)" discussed (Am. Compl. ¶ 83)—and provides even more details regarding the "time, place, content, speaker, and listener" of one such complaint. (*Id.* ¶¶ 74, 80–83.)

The remainder of Defendants' arguments are incomprehensible.  But, in all events, the Amended Complaint's detailed allegations plausibly state claims for both defamation and trade libel.  The Amended Complaint plausibly alleges that Defendants, acting in concert (1) submitted

27

reports to Amazon on at least four separate occasions stating that Plaintiff sold "counterfeit" Pure Brazilian Products; (2) those reports were false; and (3) made with actual malice or reckless disregard for the truth; and (4) the reports harmed Plaintiff, including suspension from selling Pure Brazilian Products and damage to its relationship with Amazon and its customers. (*See, e.g.*, Am. Compl. ¶¶ 162–74.)  Defendants' contention they are permitted to "control . . . the distribution and pricing of . . . Pure Brazilian Products" by blocking sales "by discount resellers" by any means possible, including defamation and libel, (Mot. at 33), is not plausible and, in all events, an issue that will require discovery and fact finding.

## VI.  THE DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION

### A.  Legal Standards for Exercising Personal Jurisdiction

The plaintiff bears the burden on a 12(b)(2) motion to prove, by a preponderance of the evidence, grounds for jurisdiction. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). If the district court does not hold an evidentiary hearing, then plaintiff need only make a prima facie case of personal jurisdiction. *See Planet Techs., Inc. v. Planit Tech. Grp., LLC*, 735 F. Supp. 2d 397, 399 (D. Md. 2010). Furthermore, in making its jurisdictional determination, the court shall draw all reasonable inferences in favor of the plaintiff. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) ("[I]n considering a personal jurisdiction challenge in the absence of an evidentiary hearing, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.") (internal emphasis omitted).

This Court may exercise personal jurisdiction over a nonresident defendant if it both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment are satisfied.  *See Carefirst of Md., Inc.*, 334 F.3d at 396.  "Maryland courts have concluded that the State's long-arm statute, Md. Code Ann., Courts & Jud. Proc. § 6-103, ***expands Maryland's***

***exercise of personal jurisdiction to the extent allowed by the Due Process Clause*** of the Fourteenth Amendment." *Allstate Indem. Co. v. Overturf*, No. GJH-14-466, 2015 U.S. Dist. LEXIS 34501, at *8 (D. Md. Mar. 19, 2015). Therefore, the limits of Maryland's statutory authority to exercise personal jurisdiction are the same as the limits of the Due Process Clause; the statutory inquiry merges with the constitutional inquiry so that they are essentially one. *Id.*

The exercise of jurisdiction does not offend the Due Process Clause if Defendants have established "minimum contacts" with Maryland, "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Laureate Educ., Inc. v. Megahed*, No. AW-10-749, 2010 U.S. Dist. LEXIS 65709, at *13 (D. Md. July 1, 2010). "The critical issue in determining whether the defendant has established minimum contacts with the forum state is an analysis of whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* at *13–14 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). "Minimum contacts can give rise to either general jurisdiction, in which the cause of action does not relate to the contacts but the contacts are so 'continuous and systematic' that jurisdiction is proper, or specific jurisdiction, where the cause of action arises out of the defendant's contacts with the forum state." *Id.* at *14.

Even though a defendant's forum state contacts may not support general jurisdiction, they may still meet the less stringent standard for specific jurisdiction if sufficiently related to the cause of action. *See Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014); *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 476–77.

**B.     The Court Has Specific Personal Jurisdiction over Defendants**

Here, Maryland's long-arm statute allows the Court to exercise personal jurisdiction over non-resident Defendants on multiple grounds.   Maryland's long-arm statute, Md. Code Ann., Courts & Jud. Proc. § 6-103(b), provides that "[a] court may exercise personal jurisdiction over a person, who," *inter alia*, "[t]ransacts any business or performs any character of work or service in the State" or "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State."  Md. Code Ann., Courts & Jud. Proc. § 6-103(b)(1), (4).

As discussed above, and at length in the Amended Complaint, Defendants have caused tortious injury within Maryland by the filing of false reports with Amazon concerning a Maryland company.  Given their reckless counterfeiting allegations, Defendants should not be surprised to find themselves facing a claim for a declaratory judgement of non-infringement.  Clearly, the Court's exercise of personal jurisdiction over Defendants does not offend due process. *See, e.g.*, *Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 434 (D. Md. 2018) ("Plaintiff has made at least a *prima facie* showing that exercising personal jurisdiction over Defendants does not 'offend traditional notions of fair play and substantial justice'" by alleging that "Defendants engaged in 'extra-judicial efforts' to interfere with its business activities in Maryland."); *JHRG LLC v. StormWatch, Inc.*, No. 1:09CV919, 2011 U.S. Dist. LEXIS 81823, at *29 (M.D.N.C. July 26, 2011) (finding personal jurisdiction over declaratory judgment defendant where defendant's extra-judicial enforcement activities consisting of communications sent to a third party had the potential to interfere with the alleged infringer's business activities in its home state).

Defendants certainly have established "minimum contacts" with the State of Maryland such that they should have reasonably anticipated being haled into court here.  Defendants

arguments that, *inter alia*, Defendants are domiciled in the States of Florida and California and do not specifically target residents of Maryland when advertising Pure Brazilian Products (*see* Mot. at 5–6) are irrelevant.   This Court has specific jurisdiction over Defendants where they intentionally (and in bad faith) filed false reports against Plaintiff, and knew or should have known that Plaintiff is located in Maryland.  (Am. Compl. ¶¶ 29, 69–70, 83–87.)

Indeed, in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, the Court of Appeals for the Tenth Circuit found that the defendants were subject to specific jurisdiction under an almost identical fact pattern.  514 F.3d 1063, 1067–68, 1080 (10th Cir. 2008).  In *Dudnikov*, the plaintiffs ran a successful online business from their home in Colorado selling fabric through eBay.  *Id.* at 1067.  The defendants filed reports with eBay, alleging that the plaintiffs' fabrics infringed on the defendants' copyrighted images.  *Id.*  Such reports adversely affected the plaintiffs' business and future dealings with eBay.  *Id.*  Accordingly, the plaintiffs filed suit in federal district court in Colorado seeking a declaratory judgment that their prints did not infringe the defendants' copyrights.  *Id.*  The defendants—a British corporation and a Delaware corporation with its principal place of business in Connecticut—moved to dismiss on the grounds that the Colorado court lacked personal jurisdiction.  *Id.* at 1067–68.  The district court granted defendants' motion to dismiss, and the Court of Appeals reversed.

The Court of Appeals in *Dudnikov* found that the defendants had sufficient "minimum contacts" with Colorado for purposes of specific jurisdiction.  In this regard, *Dudnikov* found that the complaint sufficiently pled that the defendants undertook intentional, and allegedly tortious, actions based on allegations that: (i) the defendants purposefully sent a letter to eBay with (ii) the intent of interfering with plaintiffs' ability to sell on eBay thereby causing them lost business and a damaged business reputation; (iii) on the basis of an erroneous copyright claim; (iv) which was

31

made in bad faith as an "unwarranted interference in the lawful sale of an item." *Id.* at 1073.  The Court found that the complaint sufficiently pled that defendants aimed such tortious activities at Colorado because, although "defendants intended to send the [letter] to eBay in California, . . . they did so with the ultimate purpose of cancelling plaintiffs' auction in Colorado." *Id.* at 1075. Based on these allegations, the *Dudnikov* Court found that the defendants "purposefully directed" their activities at Colorado.  *Id.* at 1078 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

The *Dudnikov* Court likewise found that the lawsuit arose out of defendants' contacts with Colorado, namely, their sending of the letter to eBay and the resulting harm that the plaintiffs sought "to have remedied: the cancellation of their auction and the black mark on their eBay record."  *Id.* at 1078–80.   Finally, the *Dudnikov* Court found that the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice," especially where defendants "purposefully caused the cancellation of [plaintiffs'] auction and allegedly threatened their future access to eBay and the viability of their business" when defendants could have "sen[t] a mere cease-and-desist letter directly to plaintiffs."  *Id.* at 1080–82.

Except for the fact that the false reports at issue in *Dudnikov* were submitted to eBay rather than Amazon and were based on allegations of copyright rather than trademark infringement, the relevant facts here are almost identical.   Colorado's long-arm statute, just like Maryland's, "confers the maximum jurisdiction permissible consistent with the Due Process Clause."  *Id.* at 1070.  Defendants (i) purposefully sent false reports to Amazon (ii) with the intent of interfering with Plaintiff's ability to sell on Amazon, (iii) on the basis of an erroneous trademark claim; (iv) which was made in bad faith as an unwarranted interference in the lawful sale of Pure Brazilian Products.  *Id.* at 1073.  Although Amazon is located in Washington (Mot. at 9 n.7), Defendants filed these false reports with the ultimate purpose of interfering with Plaintiff's business in

32

Maryland.[6]  For the same reasons as those articulated by the *Dudnikov* Court, this Court should similarly find that specific jurisdiction applies here.

Nor are there any special circumstances here whereby an exercise of jurisdiction over Defendants would offend traditional notions of fair play and substantial justice.  Rather, Defendants choose to transact business in the State of Maryland by, among other things, engaging in significant advertising, marketing, sales, shipments, and distribution of goods into Maryland and to consumers in Maryland.  One channel through which Defendants sell goods to Maryland consumers is through CC Beauty's highly interactive commercial website purebrazilian.com.  (*See* Kaufman Decl. ¶¶ 25–28.)  Defendants admit that CC Beauty sells products to consumers in Maryland through this website and ship the purchased products into Maryland.  (*Id.* ¶¶ 26–28.)

Defendants also sell Pure Brazilian Products ***directly to salons in Maryland.***  In direct contradiction to Kaufman's testimony (*Id.* ¶ 25), the "FIND A SALON" page on purebrazilian.com states that "Pure Brazilian is proud to be represented" by the following "Certified Salons" ***within the State of Maryland***: (1) Salon S By Shavon, 37 Main Street, Reisterstown, ***MD*** 21136; (2) Medeline's Beauty Salon, 144 Willowdale Dr. Suite 21, Frederick, ***Maryland*** 21702; (3) Zohra Salon Et Boutique, 11325 Seven Locks Road, Rockville, ***Maryland*** 20854; and (4) Turning Heads Salon, 32 Denton Plaza, Denton, ***MD*** 21629.  (*See* Ex. 7.)

In sum, Plaintiff has set forth a *prima facie* showing of personal jurisdiction, and Defendants' Motion should be denied.[7]

---

[6] *Dudnikov* rejected defendants' argument that they did not know plaintiffs' business was located in Colorado, because plaintiffs sufficiently pled otherwise.  *Dudnikov*, 514 F.3d at 1076.

[7] With respect to its jurisdictional arguments, Defendants also argue that the Amended Complaint does not sufficiently allege a claim or specifically identify the activities of each Defendant that would subject them to liability. (Mot. at 11–13.) However, as explained herein (*see supra* Section V.A), the Amended Complaint plausibly alleges that each of the Defendants participated in coordinated tortious activities and describes each of their roles in such activities.

C.     **To the Extent That This Court Lacks Personal Jurisdiction, This Case Should Be Transferred to the Southern District of Florida**

When a district court finds it lacks personal jurisdiction, it has discretion under 28 U.S.C. § 1406(a) to transfer the case to an appropriate jurisdiction. 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). "Section 1406(a) has been construed to permit transfers where personal jurisdiction is lacking in the transferor court, but would be available in an alternative forum." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 277 (4th Cir. 2005); *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988).

Here, Defendants agree that this case could be brought in the United States District Court for the Southern District of Florida, where each of the Defendants are subject to personal jurisdiction.  (Mot. at 34.)  Accordingly, in the event that the Court determines that personal jurisdiction does not lie with respect to any particular Defendant, such claims should be transferred to the Southern District of Florida.

**VII.   DEFENDANTS' § 1404(a) REQUEST TO TRANSFER SHOULD BE DENIED**

Notwithstanding, in the event that the Court agrees that Plaintiff has made a *prima facie* case of personal jurisdiction, Plaintiff does not consent to transfer, and Defendants have not met their burden to show that a transfer is warranted under 28 U.S.C. § 1404(a).

To prevail on a motion under § 1404(a), the moving party "must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice."  *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002).  Four factors are considered in this determination: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience

34

and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers &*
*Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F.3d 436, 444 (4th Cir. 2015).

Defendants' arguments for a transfer of venue are wholly conclusory.  As Defendants
recognize, "[a]s a general rule, a ***plaintiff's choice of venue is entitled to substantial weight*** in
determining whether transfer is appropriate." *Id.*  Moreover, aside from a conclusory statement
from both Kaufman and Medrick that "[l]itigating this matter, in the State of Maryland, would be
a hardship" (Kaufman Decl. ¶ 29; Medrick Decl. ¶ 8), Defendants do not "provide details on which
witnesses are necessary to [their] defense and how they would be inconvenienced in particular."
*SEC v. Miller*, No. TDC-19-2810, 2020 U.S. Dist. LEXIS 101646, at *23 (D. Md. June 10, 2020).
In this regard, Defendants only identify Kaufman and Medrick as potential witnesses (Mot. at 34–
35), out of which only Kaufman is located in Florida (Kaufman Decl ¶ 3).  Medrick is a resident
of California (Medrick Decl ¶ 3) and can be no more inconvenienced by litigating this dispute in
Maryland than in Florida.  Thus, Defendants have "not shown how witness convenience and access
to sources of proof favor transfer." *Miller*, 2020 U.S. Dist. LEXIS 101646, at *23; *see, e.g.*, *Helsel*,
198 F. Supp. 2d at 712 (defendants failed to provide affidavits detailing the alleged hardship).

Likewise, Defendants have "failed to meet [their] burden to show that a transfer will better
serve the interests of justice. *Miller*, 2020 U.S. Dist. LEXIS 101646, at *23.  Defendants transact
business in the State of Maryland, and CC Beauty even "certifies" Maryland salons to carry their
products.  Furthermore, "Maryland has an interest in a case involving its residents," including
Plaintiff, and thus the interests of justice do not warrant transfer. *Id.* at *24.  Defendants have not
met their burden to show that a transfer is warranted pursuant to § 1404(a).

## VIII.   CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

35

Respectfully submitted,

Dated:  June 24, 2020

/s/ Julie A. Hopkins
Julie A. Hopkins (Bar No. 28025)
HOPKINS IP, LLC
6 E. Eager Street, Suite 380
Baltimore, MD 21202
Telephone:  (410) 696-3306
E-mail:      jhopkins@hopkins-ip.com

Mark Berkowitz (admitted *pro hac vice*)
Sandra A. Hudak
  (*pro hac vice* application forthcoming)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY  10016
Telephone:  (212) 336-8000
Fax:           (212) 336-8001
E-mail:      mberkowitz@arelaw.com
                  shudak@arelaw.com

***Attorneys for Plaintiff Big Birds, LLC***

36

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 24, 2020, a true and correct copy of the foregoing was

electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.

<u>/s/ *Julie A. Hopkins*</u>
Julie A. Hopkins

4846-4849-4529v.3